# McNeely Company, Appellant, *v.* Bank of North America.

*Banks and banking—Check—Forgery—Notice to bank of forgery.*

The duty of a depositor in a bank, upon discovering that it has paid and charged to his account either a check bearing his forged signature as drawer or his check on the forged indorsement of the payee, is to promptly notify it of the forgery.

The relation between a bank and its depositor is a contractual one. Its undertaking with its depositor is to pay his checks if he has sufficient funds with it for that purpose, and it assumes all the risk as against him of a mispayment in paying and charging to his account a check which he has not signed or one he has signed bearing a forged indorsement of the payee. To his account it may not charge such a check. If it does, the depositor can recover from it the amount so charged. No payment by a bank on a forged signature of a depositor as drawer of a check or on a forged indorsement of his payee can affect him. His right is to get back from the bank whatever he has deposited with it, less what has been properly paid out on his orders. The responsibility of the bank to the depositor is absolute and it can retain no money deposited with it by him to reimburse it for any mispayment it has made out of such deposit; but it can recover from the forger responsible for the mispayment or from those who, by their indorsement of a check, have vouched for previous indorsements or the genuineness of the signature of the alleged drawer.

Whenever a depositor knowingly withholds from the bank knowledge of a forgery without which the bank cannot proceed in an effort to protect itself, the depositor ought to be regarded when he comes to enforce alleged rights against the bank, as having withheld from it a substantial right without regard to what might or might not have resulted from a prompt exercise of that right. Delay on the part of the depositor leads not only to delay by the bank in proceeding against the forger, but also to possible loss of evidence, and to the possible loss of

opportunity of recovering from persons interested in the forger, whose interest may abate by the delay.

In a suit by a depositor against a bank to recover the amount which it may have improperly paid on a forgery, the issue is the forgery, and this issue ought not to be complicated with another and a speculative one, as to whether anything might have been recovered from the forger, if prompt notice had been given to the bank of the forgery.

A delay of three months in giving notice to a bank of a forged check, after the discovery of the forgery, will deprive the depositor of his right to recover the amount of the check from the bank.

Argued Jan. 9, 1908. Appeal, No. 223, Jan. T., 1907, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1904, No. 1,846, dismissing exceptions to report of referee in case of McNeely Company v. Bank of North America. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Exceptions to report of John M. Gest, Esq., referee.
The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to the report of referee.

*G. W. Pepper*, with him *B. F. Pepper*, for appellant. — An ordinary writing up of a bank book with a return of vouchers or a statement of accounts, precludes no one from ascertaining the truth and claiming its benefit. See also Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96 (6 Sup. Ct. Repr. 657); First Nat. Bank of Washington v. Whitman, 94 U. S. 343.

If the depositor has not given notice to the bank as soon as he reasonably might, and if during the interim between the full discovery of the forgery and notice, the bank has lost rights over against other parties, the depositors will be estopped from recovering, but it is submitted that before a bank will be permitted to take refuge behind this defense facts must be proven upon which to base an estoppel. A rule imposing the duty of immediate notice upon a depositor in the absence of such proof, would be arbitrary, and based neither on sound legal theory nor upon business expediency: Third

Nat. Bank v. Merchants' Nat. Bank, 76 Hun, 475; Critten v. Bank, 171 N. Y. 219 (63 N. E. Repr. 969); Bank of British North America v. Bank, 91 N. Y. 106; Janin v. Bank, 92 Cal. 14 (27 Pac. Repr. 1100); Murphy v. Bank, 77 N. E. Repr. 693; Hardy & Bros. v. Chesapeake Bank, 51 Md. 562; Pollard v. Wellford, 42 S. W. Repr. 23; Weinstein v. Bank, 69 Tex. 38 (6 S. W. Repr. 171).

*Alex. Simpson, Jr.*, of *Simpson & Brown*, for appellee.— A finding by the referee was approved by the court below, and like every other finding by a referee, so approved, is to be held conclusive in this court, unless it is without evidence to support it: Phila. Co. v. Gas Co., 180 Pa. 235; Ridge Ave. Pass. Ry. Co. v. Phila., 181 Pa. 592; Old Colony Trust Co. v. Transit Co., 192 Pa. 596.

The argument thus presented assumes that the conclusion reached is one of fact, and so it must be. The referee's inferences from the evidence are like the inferences of a jury, and are to be given the same weight: Bruch v. Phila., 181 Pa. 588; Newlin v. Ackley, 6 Pa. Superior Ct. 337; Van Schaack on Bank Checks, 190.

Good faith compels prompt notice when the fact becomes known, and the "settled rules of the law of negotiable paper" require care and diligence in the ascertainment of the fact, in this and all other matters within the law merchant: Price v. Neal, 3 Burr. 1354; Rick v. Kelly, 30 Pa. 527; Leather Mfrs. Nat. Bank v. Morgan, 117 U. S. 96 (6 Sup. Ct. Repr. 657); Robb v. Vos, 155 U. S. 13 (15 Sup. Ct. Repr. 4); Cooke v. United States, 91 U. S. 389; Lynch v. Smyth, 25 Colorado, 103 (54 Pac. Repr. 634); Weinstein v. Bank, 69 Texas, 38 (6 S. W. Repr. 171); United States v. Clinton Nat. Bank, 28 Fed. Repr. 357; United States v. Nat. Exchange Bank, 45 Fed. Repr. 163; Iron City Nat. Bank v. Ft. Pitt Nat. Bank, 159 Pa. 46; States v. Bank, 203 Pa. 69.

Upon the question now under consideration there is absolutely no distinction in principle between the cases of forged signatures and the present case of a forged indorsement. In the former the depositor is bound to inform the bank promptly after settlement of his account, for within a reasonable time thereafter he is conclusively presumed to know. In the latter

he was bound to inform us as soon as he actually did know. In the former, as held in Myers v. Bank, 193 Pa. 1, and kindred cases, the depositor was refused recovery, irrespective of proof of actual loss, because of failure to promptly notify after he should have known; in the latter he should likewise be refused recovery, for failure to promptly notify the bank after he in fact knew, and for precisely the same reason. In each case the imaginary "last clear chance" to avoid the loss rested with the bank. In each case the account returned was an account stated simply. In the former case it was urged unsuccessfully that the bank was bound to show as a fact that it could have recouped itself had it known earlier; and no reason can be found in law, logic or common sense, why such a plea should be successful in the latter case, when, as here, there was a long and unnecessary delay after actual knowledge. Does anyone suppose that in the former case three months' delay and three settlements of the account would have been held reasonable after presumptive knowledge? Can anyone imagine a real reason why, in the latter case, it should be after actual knowledge?

OPINION BY MR. JUSTICE BROWN, June 2, 1908 :

McNeely Company, a corporation, was a depositor with the appellee, the Bank of North America, and had in its employ one Charles S. Reber, who, between April 20, 1897, and February 24, 1903, forged the names of payees on ninety checks issued by it. Some of these checks were paid directly to him by the appellee, and others he deposited to the credit of his account with certain banks and bankers, who collected them through the clearing house. Each of said checks was charged to plaintiff's account with the defendant, and the amount thereof entered as a charge against its deposit in its bank book when the same was settled. On each settlement the balance was struck and entered, after deducting the amount of the checks paid on the forged indorsements. During the period of these forgeries the bank book of the appellant was settled seventy-six times, and all checks that had been paid by the bank, including those bearing the forged indorsements, were regularly returned to the appellant at each settlement of its bank book. Reber continued in its employ until April 1, 1903.

Some of his forgeries were discovered on or about January 1, 1904, and within two or three weeks thereafter a very large number of the ninety forged indorsements were discovered. The twenty-fourth finding of fact of the referee is: "No notice was given by the plaintiff to the defendant of the forgeries or any of them until April 11, 1904. As stated in finding No. 10, the bank book was settled three times, viz., on February 1, 1904, February 28, 1904, and March 31, 1904, after the discovery of the forgeries and before notice was given thereof on April 11, 1904. During the same period, Robert K. McNeely, who was a director of the bank, attended directors' meetings weekly from January 4, 1904, to April 11, 1904, a total of fourteen meetings, but gave no notice to the bank concerning the forged indorsements or complaining of their payment." Robert K. McNeely, referred to in the foregoing finding, was a director of the company and its secretary and treasurer, having charge of its offices and the examination of its trial balances.

Reber was able to conceal his forgeries from his employer by a complicated and ingenious system, which need not be here described, for the referee has found that the appellant was not negligent in failing to discover them sooner, though they extended through a period of nearly six years. The reasons for this finding are unimportant, if the legal conclusion of the referee and court was correct, that the appellant so delayed giving notice to the bank of the forgeries, after it had discovered them, that it cannot recover the amount paid and charged to its account on any of the forged indorsements. The fact that Reber had forged some of the indorsements was, as stated, discovered about January 1, 1904, and within two or three weeks thereafter it was known to the appellant that a very large number of the ninety forgeries had been committed; but no notice of this was given to the bank until nearly three months afterwards.

The duty of a depositor in a bank, upon discovering that it has paid and charged to his account either a check bearing his forged signature as drawer or his check on the forged indorsement of the payee, is to promptly notify it of the forgery. This notification is not only a duty, but it is what a depositor will instinctively do on discovering, upon the return of his

bank book with canceled checks charged to his account, that there are among them some which he never signed or which were not paid to the payees named in them. This duty is not questioned by the learned counsel for the appellant. Their contention is, that, for the disregard of it, a depositor is not to be barred from recovering from the bank what it may have paid on his forged signatures or on the forged indorsements of payees named in checks drawn by him, unless, by his failure to promptly notify it of the forgeries, it has lost rights over against other parties, and the burden is upon it to prove such loss. Authorities are not wanting to support this, but the referee and court below did not follow them. Relying upon others, they held that the plaintiff, by reason of its failure to promptly notify the bank of its discovery of the forgeries, could not recover, even though the bank had offered no evidence that it could have protected itself and the plaintiff had not shown that it could not, if prompt notice had been given.

The relation between a bank and its depositor is a contractual one. Its undertaking with its depositor is to pay his checks, if he has sufficient funds with it for that purpose, and it assumes all the risk as against him of a mispayment in paying and charging to his account a check which he has not signed or one which he has signed bearing a forged indorsement of the payee. To his account it may not charge such a check. If it does, the depositor can recover from it the amount so charged. No payment by a bank on a forged signature of a depositor as drawer of a check, or on a forged indorsement of his payee can affect him. His right is to get back from the bank whatever he has deposited with it, less what has been properly paid out on his orders. The responsibility of the bank to the depositor is absolute, and it can retain no money deposited with it by him to reimburse it for any mispayment it has made out of such deposit; but it can recover from a forger responsible for the mispayment, or from those who, by their indorsement of a check, have vouched for previous indorsements or the genuineness of the signature of the alleged drawer.

The right of a bank to recover from a forger, or from those to whom it may have paid a check bearing the forged signature of one of its depositors, or a forged indorsement, is its only remedy for the fraud practiced upon it by the forgery. The

depositor's money is not affected by it, and when he is the first to discover it, it is not reasonable that he should not be required to give prompt notice of it to the bank, if he intends to hold his depository liable for the mispayment, and this without regard to what may or may not result from a prompt effort to recover from the party or parties who may be liable to the bank for the mispayment. The depositor can gain nothing by withholding knowledge of the forgery, but the bank, if kept in ignorance of it after his discovery of it, may lose everything. As soon as a bank learns that it has paid a check on a forged signature of a depositor, or on a forged indorsement on his check, it is its duty to promptly restore to the depositor's account what was improperly taken from it, and its right at the same time is to proceed against those who wrongfully got the money. This right is to proceed immediately, and to the promptness with which a bank is able to exercise it recovery is often due. When a depositor withholds from his bank his knowledge of the forgery, he withholds from it this right to proceed promptly for its own protection. It may or may not be able to recover from the forger by promptly proceeding against him, but its right is to try by so proceeding; and when one of its depositors discovers that it has innocently sustained a loss, he ought, not only in all good conscience, but as a legal duty, to notify it at once of its mistake, for by withholding from it what he has discovered, he can, as just stated, gain nothing, but it may lose all. A forger may be insolvent or beyond the reach of civil or criminal process, but, by prompt proceedings against him, others may become interested in him and come to his assistance, who after delay may not do so. This incident to a bank's right to promptly proceed against a forger is not to be overlooked. Whenever a depositor knowingly withholds from it knowledge without which it cannot so proceed in an effort to protect itself, he ought to be regarded, when he comes to enforce alleged rights against it, as having withheld from it a substantial right, without regard to what might or might not have resulted from a prompt exercise of that right. When an indorser on a promissory note defends on the ground that prompt notice was not given him of its nonpayment, the holder will not be heard in reply that, if notice of the nonpayment had been promptly given, it would not

have helped the indorser, because he could have recovered nothing from the maker of the note or prior indorsers. The right of the indorser on a note is to prompt notice of its non-payment, that he may have an opportunity of proceeding promptly against the maker or prior indorsers, without regard to what may result from his efforts, and if this right is not given him, his liability is at an end. "The insolvency of the maker of a note, though known to the indorser, ought not to discharge the holder from giving notice. There are various degrees of insolvency, and it rarely happens that a man is totally insolvent. So that there is a chance of getting something by an application to the debtor. Besides, if a man has nothing of his own, he may have friends, who, to relieve him from pressure, will do something for him. The indorser, therefore, has a chance of securing himself, at least, in part. The only reason that can be assigned for insolvency taking away the necessity of notice is, that notice could be of no use to the indorser; but it is almost impossible to prove that it might not have been of use; therefore, it is necessary:" Barton v. Baker, 1 S. & R. 334. Why should a different rule apply to a bank, which never knowingly pays on a forgery but, in cases like the one now before us, is always an innocent victim?

Delay by a depositor in giving notice to a bank means not only its enforced delay in proceeding against those liable to it, but means loss of evidence as well; and if the rule for which appellant contends should prevail, a bank might be deprived of the opportunity of showing that prompt proceeding on its part would have resulted in its recovering for its loss. And again, in a suit brought by a depositor against a bank to recover the amount which it may have improperly paid on a forgery, the issue is the forgery. This issue ought not to be complicated with another, and a speculative one, as to whether anything might have been recovered from the forger, if prompt notice had been given to the bank of the forgery. The only reasonable and logical rule is the one adopted by the referee and the court below. Our own cases are in harmony with it, and it is approved by high authority. A different one would be putting a premium upon the laches of a depositor, and give to a dishonest one opportunity to help a forger to escape.

In Rick v. Kelly and Rick v. Fisher, 30 Pa. 527, the plain-

tiffs below purchased from the defendants notes bearing the genuine signature of George Fox, as maker, but the forged indorsements of the payee. In reversing the judgments in favor of the plaintiffs and announcing the general rule that notice of a forgery within a reasonable time after discovery is necessary for the maintenance of an action for the recovery of the money paid for such notes, it was said by PORTER, J.: "The notes in this suit contained a genuine name. For aught that appears, timely application to that party might have saved the debt, for others thought proper to obtain judgments and sell his property. At some stage of the business, the plaintiffs obtained knowledge of the forgery, for they brought the actions and put the fact on record. Why not inform the defendant of his risk, and give him a chance of escape by a direct blow at the maker? What justice could there be in permitting a holder to hold on until the very close of the period of limitation, and then to spring a suit on the seller, when the genuine parties are dead and their estates gone?"

In Myers v. Southwestern National Bank, 193 Pa. 1, in a suit to recover what had been paid by the bank on the forged signature of the plaintiff to checks, judgment on a verdict directed for the defendant was sustained, because the plaintiff had not promptly notified it of the forgeries after he was held to have had notice of them, and we said: "It was not the bank's fault that the first forgeries were not promptly discovered and notice thereof given. If the plaintiff's duty to the bank had been performed at the proper time the fact would have appeared that the bank had charged plaintiff, on his bank book, with the payment of two items ($300 and $200) for which no vouchers appeared among the checks handed to him by his clerk. These vouchers, the two forged checks, had been abstracted and destroyed by the latter. No objection having been made at the time of the first settlement, the bank had a right to assume that everything was correct, including the two checks purporting to be signed by him. His silence was tantamount to a declaration to that effect, and, in afterwards honoring checks signed by the same person, the bank had a right to consider the fact that the signatures had been at least tacitly recognized by the plaintiff as genuine. While the plaintiff was not chargeable with the knowledge of his clerk that the latter

had committed the forgery, he was clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was intrusted, viz.: to receive the checks from the bank, take them to his employer's office, compare the amounts thereof with the amounts in the bank book and check book, etc. In view of the uncontradicted evidence as to the foregoing facts, it cannot be doubted that as between the bank and the plaintiff the latter alone should be held responsible for the consequences resulting from the failure to examine the checks in question and approve or reject them within a reasonable time. In contemplation of law, the delivery of the checks to plaintiff's clerk was a delivery by the bank to the plaintiff himself, as the basis on which its credits were claimed. The bank was therefore entitled to have them examined and, if rejected, returned within a reasonable time. That was not done, and because of plaintiff's failure to perform his duty in that regard, he should not be permitted to recover. Any other rule would be inconsistent, not only with general and long-established custom, but also with well-settled principles of law on the subject: Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 107; United Security, etc., Co. v. Central Nat. Bank, 185 Pa. 586."

A very learned referee in United Security Life Insurance and Trust Company of Pennsylvania v. Central National Bank of Philadelphia, 185 Pa. 586, in his report, confirmed by the court, held that the plaintiff was not entitled to recover from the defendant the amounts paid and charged to its account on forged indorsements, because it had not promptly notified the defendant of the forgeries after it had what the referee held to be constructive notice of them. The judgment was reversed solely on the ground that the referee had erred in finding that the plaintiff had had constructive notice of the forgeries on March 27, 1894, and judgment was directed to be entered for it, because, when it actually discovered the forgeries on May 17, 1894, it gave immediate notice to the defendant. What the referee said and what was not held to be error was: "The referee is of opinion that it is not necessary for the defendant to make effective the defense based upon the want of diligence of the plaintiff in giving notice of the forgery, to show with certainty that had notice been given at an earlier day a fund be-

longing to Williams (the forger) was in existence which could have been attached and held. When it is once shown that the plaintiff failed to give prompt notice of the discovery of the forgery, the plaintiff's right of action is gone. The law assumes, and does not find it necessary to conduct an inquiry to verify the assumption, that had the notice been given promptly, the Central Bank might have taken steps to protect itself as against Williams."

A sentence from the opinion in Iron City National Bank v. Fort Pitt National Bank, 159 Pa. 46, is pointed to by counsel for the appellant as an expression from this court sustaining their contention. In that case, the present chief justice did say that all a bank which has paid a forged check of one of its depositors " Need do in any case is to give notice promptly according to the circumstances and the usage of the business, and unless the position of the party receiving the money has been altered for the worse in the meantime, it would seem that the date of notice is not material." This must be read with reference to the facts in that case. As to those in the present one, it is not applicable. There, the Fort Pitt National Bank, the defendant, which received the money on the forged check, had paid it out on the check of its depositor, to whose credit it had been placed, and all that we meant to say was, that, if the bank had not paid it out, and could still have protected itself by withholding it, the date of the notice of the forgery would not have been material.

The rule followed by the learned referee and court below is the only reasonable, logical and proper one in this class of cases. It is approved by the supreme court of the United States in Leather Manufacturers' Nat. Bank v. Morgan et al., 117 U. S. 96, where it is said by HARLAN, J.: " If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by an attachment of his property, or other form of proceeding, to compel restitution. It is not necessary that it should be made to appear, by evidence, that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. Whether the depositor is to be held having ratified what his clerk did, or to have adopted the checks

paid by the bank and charged to him, cannot be made, in this action, to depend upon a calculation whether the criminal had at the time the forgeries were committed, or subsequently, property sufficient to meet the demands of the bank. . . . As the right to seek and compel restoration and payments from the person commiting the forgeries was, in itself, a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and, it may be, effectively, exercising it: Continental Bank v. Nat. Bank of the Commonwealth, above cited: Voorhis v. Olmstead, 66 N. Y. 113, 118; Knights v. Wiffen, L. R. 5 Q. B. 660; Casco Bank v. Keene, 53 Maine, 103; Fall River Bank v. Buffinton, 97 Mass. 498."

Other questions raised by the appellant need not be considered in view of the correct conclusion of the court below that its delay in giving the appellee notice of the forgeries bars its right to recover.

The assignments of error are all overruled and the judgment is affirmed.