HOUSEMAN-SPITZLEY CORP. *v.* AMERICAN STATE BANK.

1. FORGERY—INDORSEMENT OF FICTITIOUS NAME.
   The indorsement of a fictitious payee's name on a check by one not authorized to do so is to be treated as a forgery.

2. BANKS AND BANKING—PAYMENT OF FORGED CHECK—LIABILITY OF BANK—RELEASE—DEBTOR AND CREDITOR.
   In an action against a bank for paying a check drawn by plaintiff on which an indorsement had been forged by an employee of plaintiff, defendant was not released from liability because the employee confessed his guilt and turned over to plaintiff all his property to make good his defalcations, which it accepted before notifying defendant of the forgery; under the common law rule a debtor having a right to prefer a creditor.

3. SAME—TRUSTS—RESULTING TRUSTS.
   Where said employee had used plaintiff's money to purchase land and had taken the contract therefor in his own name, a resulting trust was thereby created in favor of plaintiff (3 Comp. Laws 1915, § 11573), which entitled it to a conveyance at any time, and its assignment to plaintiff therefore would not affect defendant's liability in said action.

4. SAME—FORGERY—LACHES—ESTOPPEL.
   A delay of four or five days in notifying defendant of the

forgery would not affect its liability, in the absence of evidence showing that it had been prejudiced thereby.

5. SAME—EVIDENCE—PREJUDICE.

In order to establish an equitable estoppel for failure of the depositor to promptly notify the bank of a forgery, it must show that it was prejudiced, or lost some opportunity to protect itself by action against the forger.

Error to Wayne; Mandell, J. Submitted January 23, 1919. (Docket No. 105.) Decided April 3, 1919.

Assumpsit in justice's court by Houseman-Spitzley Corporation against the American State Bank and another for money had and received. There was judgment for defendants, and plaintiff appealed to the circuit court. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*Goodenough, Voorhies & Long,* for appellant.

*Ralph L. Aldrich,* for appellees.

STONE, J. This case grew out of certain fraudulent transactions of one Stephen I. Kux as hereinafter stated. Kux was, in June, 1917, in the employ of the plaintiff as its west side salesman. About the 19th of that month he came to B. C. Spitzley, president of the plaintiff corporation, with a proposition that he join the plaintiff in the purchase of certain property located on the west side of the city of Detroit. He represented that a considerable profit could be made by taking an option upon the property and reselling it at an advance price, before the option should expire. He stated that because of his connection with the plaintiff, he felt that he ought to give it a chance to share in the proposition. He represented that the land was owned by one Fred Maples, who lived in Dearborn, and that Maples was willing to sell at $600 per lot, and would give a 90-day option at that price,

upon the payment of $500; and he proposed that plaintiff should pay one-half of that sum, and that he should pay the other half.

Because Kux was a trusted employee of the plaintiff, and because Mr. Spitzley did not have time to make a personal investigation, other than to ascertain the location of the property upon the map, he assented to the proposition, stipulating that the option should be taken in the name of the plaintiff, and that Kux should immediately undertake the sale of the lots.

A check payable to the order of Maples for $250 was, on June 20, 1917, drawn on the defendant, the American State Bank, signed by the plaintiff, and handed to Kux to take to Maples, as plaintiff's half of the option money. The following day Kux brought to Mr. Spitzley what purported to be the option signed by Maples, which recited the consideration of $500, the description of the lots to be conveyed, and the purchase price. The option was dated July 19th instead of June 19th, and Mr. Spitzley inquired why it was dated ahead. Kux replied that he had made a mistake in dating it, but that it was satisfactory to Maples, and that it was to their advantage, as it gave them an extra 30 days.

Kux's story was a complete fabrication. He knew of no one by the name of Maples, had no transaction with the owner of the property, and had written the names of Maples and the witnesses to the option agreement, himself. He also wrote the name Fred Maples upon the back of the check, and deposited it in his own account in the Federal State Bank. That bank obtained credit for the check through the clearing house, and the check was charged against plaintiff's account in the American State Bank.

Plaintiff was first led to suspect Kux about July 20th, following. There was another man in plaintiff's employ named Black who had been defrauded by Kux,

and was about to have Kux arrested. Black reported the matter to Mr. Spitzley, and advised him to investigate transactions with Kux. Mr. Spitzley immediately obtained cancelled checks which had passed through Kux's hands, and began investigating. On July 31st, Mr. Spitzley had Kux arrested, because he had been informed by Black that Kux was endeavoring to go out of town, and he thought it was his duty to have him apprehended, as a matter of protection to the banks against which claim would be made on account of cashing the checks with forged indorsements.

All of the other checks upon which Kux had forged indorsements were drawn on the Merchants National Bank, and Mr. Spitzley did not notice until his attention was called to it by an official of that bank on August 6th, that the check payable to Maples was drawn on the American State Bank. Consequently the latter bank did not obtain information concerning the forgery of the Maples check, until several days after the Merchants National Bank was first advised of plaintiff's suspicions, and had seen the checks. It appeared that the checks drawn upon the two banks were of the same size and color of paper, which was shown to be the reason why Mr. Spitzley failed to notice the fact.

Upon August 6th or 7th notice was given to the defendant American State Bank of the forgery of the indorsement upon this Maples check, and notice was then transmitted by that bank—through the Peoples State Bank from which the American State Bank had received the check—to the defendant the Federal State Bank. The latter bank received notice of the forgery upon this check on the 8th of August, but had on the 6th received notice from the Merchants National Bank that Kux had forged indorsements upon the checks drawn upon that bank.

At the trial at the circuit, verdict and judgment

were directed against the plaintiff, because the trial court was of the opinion that certain transactions between plaintiff and Kux, after the discovery of the forgery, and before notice to defendants, released the latter from liability. It appeared that upon August 2, 1917, Kux, while in jail, was persuaded to make a complete confession of his crime before an assistant prosecuting attorney, and plaintiff's attorney, and that at the time of the confession, Kux voluntarily transferred to plaintiff all the property which he owned, being an automobile which he was purchasing from a dealer upon a title retaining contract. It did not appear that there was any understanding, as to what application was to be made of anything that might be secured out of the automobile. Plaintiff afterwards realized $292.27, after disposing of the automobile, and paying the indebtedness to the dealer, and other charges against it. Kux was at the time of this transfer indebted to plaintiff in the sum of $133 for rents collected and misappropriated, also $46.22 for money misappropriated, which had been given him for payment of taxes, and $12 for a check cashed which turned out to be worthless. These items were afterwards charged against the sum realized upon the automobile, and showed Kux as having a credit of $101.05.

This sum, however, does not take into account other large sums which Kux owed plaintiff, as a result of losses sustained through his various fraudulent transactions. These losses exceeded $10,000, and are more than the total amount that can be realized upon claims against banks upon forged indorsement of checks, as appears by the evidence. This is due to the fact that plaintiff was, after it had commenced the erection of buildings upon property obtained through Kux, obliged to pay larger sums for such property than it had expected, or intended to do. It should be stated, in explanation of the last above statement that, at the time

of this confession, Kux also assigned to plaintiff a land contract between Thomas H. Conway and wife as vendors, and himself and one Louis H. Cassin, as vendees, covering 50 lots in Detroit. This contract had been obtained the previous year in the following manner:

Kux had represented to the plaintiff that the lots conveyed by it could be purchased for $500 per lot, net to purchaser, and had given it a paper purporting to be a sales agreement signed by Conway and wife, the owners, agreeing to sell 44 of the lots at that price. Conway actually required $700 per lot, net to him for the lots, and Kux, who had forged Conway's signature and that of his wife to the sales agreement, felt obliged to get some title to the lots, as plaintiff was already building thereon. He, therefore, arranged the purchase of the lots as follows: He obtained a check from the plaintiff payable to Conway for $12,-600, sufficient to pay the full purchase price of 18 lots. He delivered this to Conway and received a deed to the plaintiff, for the 18 lots. He also obtained from plaintiff a check for $3,200, to which he added $200 of his own, and gave the same to Conway as first payment on a contract for 32 lots. This contract was made out in the names of Kux and Cassin as vendees, although the latter never knew of the transaction. It provided for final payment of $19,000 one year after date. Kux had covered up his fraud by retaining possession of the deed and contract, and giving plaintiff a forged deed for 44 of the lots; and it was not until he made his confession, August 2, 1917, that he explained the transaction, and delivered to plaintiff the deed for the 18 lots, and the contract. Kux seems to have recognized that the contract, having been fraudulently obtained with plaintiff's money, equitably belonged to plaintiff, and he, therefore, exe-

cuted an assignment of this contract when requested.

It is claimed by defendants that the transfer of the automobile, and the assignment of the land contract to plaintiff, being made before defendants had knowledge of the forgery, released defendants from liability, and the trial court so held.

Except as above, there was no evidence that defendants were deprived of any remedy against Kux, because they did not learn of the forgery as soon as plaintiff did. His bank account at the Federal State Bank had been drawn down to $4.03 July 28th, and had not changed after that date.

At the conclusion of all the evidence both parties moved for a directed verdict. The court granted defendants' motion. The plaintiff has brought error, and its assignments thereof, are that the court erred in refusing to direct a verdict for the plaintiff for $250, as requested; and that the court erred in directing a verdict for defendants.

That the indorsement of a fictitious payee's name by one not authorized to do so is to be treated as a forgery, as held in *Harmon* v. *National Bank*, 153 Mich. 73, 79 (17 L. R. A. [N. S.] 514, 126 Am. St. Rep. 467), does not seem to be questioned by either party, and by the record it appears that the ground upon which the court directed the verdict was that plaintiff by its delay in giving notice, coupled with the acceptance of the forger's property, had estopped itself to claim that the payment of the check was unauthorized.

Plaintiff contends here:

1. That notice reached the banks interested within a reasonable time.

2. That neither bank suffered by the delay.

3. That plaintiff had the right to take the forger's automobile, and apply the proceeds from its sale upon its claims against the forger.

Considering the last question first, it seems to us

that the plaintiff was not bound to refrain from accepting the assignment of Kux's interest in the automobile. Both plaintiff and defendants were Kux's creditors, and either had the right to receive payment of Kux's indebtedness, in whole or in part, except as such payments might be declared preferential in bankruptcy; in which case the payment would merely have to be shared among all creditors. This is not a court of bankruptcy, and it must follow the common law rule, which protects payments received by any one creditor.

In so far as the assignment of the land contract was concerned, it appears to us that it was a voluntary act by Kux of a duty which a court of equity would have required him to perform. He had, by his fraud, secured a contract interest in the lots in his name with money furnished by the plaintiff. A resulting trust was thereby created in favor of plaintiff, which entitled plaintiff to a conveyance at any time. See section 11573, 3 Comp. Laws 1915, and note of cases.

Plaintiff's second position is that unless defendants show prejudice by the delay of notice, there can be no estoppel; and that prejudice has not been shown; that the basis of a defense of this kind is the doctrine of equitable estoppel, and it is conceded that where a bank can show that by reason of the delay in obtaining notice, it was deprived of an opportunity to collect from the forger, as was shown in *Brown* v. *National Bank,* 170 Mich. 416 (40 L. R. A. [N. S.] 657), the depositor should not recover. And it is urged that to show equitable estoppel, however, the party asserting it must show *actual* prejudice resulting from the act or omission claimed as the basis of estoppel, and that mere fancied or conjectural prejudice is not sufficient, and *Meisel* v. *Welles,* 107 Mich. 453, and earlier cases are cited.

And it is contended that delay in giving notice to

the bank is not material, unless such delay is shown to be prejudicial; and that the great weight of authority is to that effect. The following cases are cited: *Pratt* v. *National Bank,* 79 N. J. Law, 117 (75 Atl. 313) ; *Janin* v. *San Francisco Bank,* 92 Cal. 14 (27 Pac. 1100, 14 L. R. A. 320, 27 Am. St. Rep. 82) ; *Wind* v. *National Bank,* 39 Mo. App. 72; *Brixen* v. *National Bank,* 5 Utah, 504 (18 Pac. 43) ; *Murphy* v. *National Bank,* 191 Mass. 159 (77 N. E. 693, 114 Am. St. Rep. 595).

In *Pratt* v. *National Bank, supra,* the evidence showed that plaintiff discovered the forgery in the spring of 1908. The precise date did not appear. On May 23d he notified the bank. The court did not find that an unreasonable delay had intervened, but said:

"Assuming that there was an unreasonable delay in reporting the forgery after discovery, there remains for consideration the question whether it must appear in order to preclude the plaintiff's recovery, that, because of such negligent failure to give notice, the bank was prejudiced in its right of action against the forger or other third parties. While there is some conflict in the cases, yet the rule established by the great weight of authority is that a depositor's delay in giving notice to the bank of the forged indorsement of this check, after he discovers it, will not be a defense to his action against the bank to recover the amount of the check, unless the bank was injured by the delay."

The doctrine of the responsibility of the depositor to his bank, for the result of failure promptly to notify it of the forgery, was held in *Hardy* v. *Chesapeake Bank,* 51 Md. 562, 34 Am. Rep. 325), to rest upon the principle of an estoppel *in pais,* which may be invoked to prevent an injustice only by one who can show that he has acted or refrained from acting, by the conduct of another which would ordinarily influence other persons; and the court relying upon this doctrine, held that it was incumbent upon the bank to show that it

had been actually misled to its injury, by the conduct of the depositor.

Counsel for defendants contends that the better doctrine is that delay of itself, without any proof of a change in the relations between the parties, is a bar to recovery, and the following cases are cited: *United States* v. *Exchange Bank,* 45 Fed. 163; *Van Wert Nat. Bank* v. *First Nat. Bank,* 6 Ohio C. C. 130; *McNeely Co.* v. *Bank of North America,* 221 Pa. 588 (70 Atl. 891).

An examination will show that in 20 L. R. A. (N. S.) 79, in a note to *McNeely Co.* v. *Bank of North America, supra,* it is said:

"It seems to be the general rule, contrary to that laid down in *McNeely Co.* v. *Bank of North America,* that before a bank is justified in charging the amount paid upon the forged paper, against the account of a depositor, or correspondent bank, because of negligence in discovering, or reporting the forgery, it must show that it was prejudiced, or lost some opportunity to protect itself by action against the forger,"

—and the cases are reviewed at considerable length.

The Ohio case cited by defendants' counsel is not a decision of a court of last resort, and we are unable to find that it has been followed by any other court of the State.

In *Brown* v. *National Bank, supra,* while this court denied recovery by the payee on the ground that she was guilty of laches, it placed its decision upon the ground that an equitable estoppel had been shown; it appearing that defendant could have avoided loss by holding the bank account of the forger, if the payee's agent had seasonably informed it of the forgery. We invite attention to the language of Justice STEERE, upon that subject.

We are of the opinion that the great weight of authority is as claimed by counsel for plaintiff; that the

defendants have not sustained the burden of showing prejudice or injury; and that it does not appear that defendants would have been in any better condition had they received notice of the forgery on the day of Kux's confession. He had not been allowed to escape, but was in custody upon complaint of plaintiff at the time of notice. Upon this record we think the plaintiff was entitled to a directed verdict in its favor.

The judgment below is reversed and a new trial granted, with costs to appellant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. KUHN, J., did not sit.