## Interstate Hosiery Mills, Inc., *v.* First National Bank of Lansdale, Appellant.

Argued December 12, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Samuel D. Conver,* for appellant.

*Desmond J. McTighe,* of *Fox & McTighe,* with him *Hirschwald, Goff & Rubin,* for appellee.

OPINION BY PARKER, J., March 2, 1940:

This is an action in assumpsit brought against a bank by one of its depositors to recover the sum, with interest, of four checks paid by the bank on the forged signatures of two of the officers of the depositor and charged to the depositor's account. The issues raised were submitted to a jury and after a verdict in favor of the plaintiff, the refusal of defendant's motion for judgment n. o. v., and entry of judgment for the plaintiff, the defendant appealed, claiming that judgment should be entered in its favor.

There was evidence tending to show that the bank paid the four checks on forged signatures and deducted the amounts thereof from depositor's account with it. It is admitted by plaintiff, however, that the checks alleged to have been forged were not delivered to the bank before this suit was begun. As a general rule, a bank on which a check is drawn by one of its depositors is charged with knowledge of its depositor's signature and if the bank pays a forged check it does so at its peril. Payment, in legal contemplation, will be considered to have been made out of the bank's own funds so that it has no right to charge the depositor's account with the amount thereof and will be held liable to him for so doing: *National Union F. Ins. Co. v. Mellon Nat. Bk.,* 276 Pa. 212, 216, 119 A. 910; 9 C. J. S., Banks & Banking, §356.

The bank, however, contends that suit would not lie against it until the alleged forged checks were returned to it, and that in any event the uncontradicted evidence produced by the depositor was so clear and precise that the court should have declared as a matter of law that the depositor was guilty of such an unreasonable delay in advising the bank of the forgeries as to bar a recovery. We will therefore limit our consideration to a

discussion of the defenses raised, first considering the subject of delay in connection with the evidence bearing on these questions, viewing it in a light most favorable to plaintiff, as we are required to do.

The plaintiff, Interstate Hosiery Mills, Inc., operated a large mill and had offices at Lansdale, Pennsylvania. It carried accounts in ten or more banking institutions, including several accounts in First National Bank of Lansdale, the defendant. The account here involved was known as a transfer account and on it eighteen to twenty-nine checks were drawn each month, the account being used mainly as a means of transfer of cash from New York or other places where its funds were principally kept in order to provide for the payment of its payrolls and the cash demands arising at its local office. The payrolls were met either by withdrawing funds in cash or by transferring them to another account known as the payroll account from which individual checks were drawn in favor of the employees. By an arrangement between the bank and the depositor, the bank was required, upon the first business day of each month, to render a statement to Interstate of its checking accounts for the preceding month and to return to it the cancelled checks. This arrangement was strictly complied with over a period of years. The statements and checks for the months of December, 1937, and January, 1938, reached plaintiff's office on the first or second days of the succeeding months.

The bank, during December, 1937, paid two checks purporting to be signed by officers of Interstate, one on December 16, 1937, for $189.55, and the other on December 17, 1937, for $190, and charged these checks to Interstate's account. The dates and endorsements of these two checks were not shown as they were apparently destroyed by the forger after their return to the depositor, as we shall later see. Two checks dated January 8, 1938, for $141.75, and January 24, 1938, for $760, were paid by the bank on January 12 and January 26,

1938, respectively. The January checks were made payable to Ray Marien and the December checks were presumably so made. None of the four checks was signed by persons authorized to execute checks for plaintiff.

For a period of ten years, Interstate had employed certified public accountants, Homes & Davis, of New York, to make monthly, semi-annual, and annual audits of all their accounts, the auditors being also entrusted with the duty of preparing various statements required by federal authorities, income tax reports, tax reports, and the like. It had full access to the offices and all of the accounts and books of Interstate. The senior supervising auditor in charge of the various audits was Ray Marien, an employee of Homes & Davis. When the December cancelled checks and statement were delivered to Interstate, they were forthwith turned over by it to the auditors and Ray Marien took them to New York to the offices of the auditing company in that city. Although the head bookkeeper for plaintiff requested Marien to return the checks to him, he did not do so but retained them.

On January 31, 1938, the bank received, on the stationery of Interstate, a letter purporting to be signed by one of its officers requesting the bank to forward the January cancelled checks and statement to Homes & Davis at New York. This letter was a forgery, apparently perpetrated by Marien, and led to his detection. By a mistake of one of the employees of the bank, the instructions in that letter were not obeyed and an officer of the bank immediately called an officer of Interstate and apologized. The officer of Interstate, not having written such a letter, was surprised and started inquiries. The result was that Interstate discovered, on February 2, that the letter of January 31, 1938, was a forgery and that four amounts had been withdrawn from its account corresponding with the checks referred to and that there were no corresponding entries on

their books. The forged checks all bore numbers and this led to the discovery that the blank checks used in perpetrating the forgeries were torn from the back of the check book and that the corresponding stubs were removed. On February 2, as soon as Interstate obtained this information, it promptly notified the bank it had drawn no such checks and made demand for reimbursement. It thereafter acted with reasonable promptness in obtaining and supplying information with respect to the manner in which and the person by whom the forgery was perpetrated. The depositor received from the bank a copy of the December statement, but it has not been able since January 2, 1938, to obtain the forged checks cashed in December for delivery to the bank.

Ray Marien was promptly prosecuted in New York for the cashing of one of the checks forged in January and is now serving a term in a penitentiary in that state. The January checks were immediately placed in the hands of the district attorney in New York as necessary evidence in the prosecution of the forger, and when the checks had served that purpose they were returned to the plaintiff and produced at the trial.

While no degree of care on the part of the bank will relieve it from liability for paying a forged check, it may be relieved by the conduct of the depositor. When a depositor's pass book has been written up and returned to him with the cancelled checks which have been charged to his account, it is his duty to examine such checks within a reasonable time and to report promptly any forgeries which he has discovered. Failure to make such examination, and discover the forgeries or failure to report forgeries so discovered deprives the depositor of a right of action against the bank. This principle is sometimes grounded on estoppel, sometimes on negligence of the depositor, and again the rendering of a statement by the bank is considered the equivalent of an account stated: *Est. of*

*Globman v. Southwestern Nat. Bk.*, 103 Pa. Superior
Ct. 589, 157 A. 626; *Marks v. Anchor Savings Bank,*
252 Pa. 304, 97 A. 399; *Myers v. Southwestern Nat. Bk.,*
193 Pa. 1, 44 A. 280; 9 C. J. S., Banks & Banking,
§356 d. (1).

"When it is once shown that the plaintiff failed to
give prompt notice of the discovery of the forgery, the
plaintiff's right of action is gone. The law assumes,
and does not find it necessary to conduct an inquiry
to verify the assumption, that had the notice been given
promptly, the Central Bank might have taken steps to
protect itself as against Williams [the forger]": *Mc-
Neely Co. v. Bank of N. A.,* 221 Pa. 588, 598, 70 A. 891.
"It is not necessary that it should be made to appear,
by evidence, that benefit would certainly have accrued
to the bank from an attempt to secure payment from
the criminal": *Leather Mfgrs. Nat. Bk. v. Morgan,* 117
U. S. 96, 6 S. Ct. 657, 664.

As the time and circumstances involved in the Dec-
ember and January checks are in some respects differ-
ent, we will discuss them separately. Although the
checks forged in December, 1937, were returned to the
depositor on January 2, 1938, it did not advise the bank
of the forgeries until February 2, 1938. It will be
noted that Interstate insisted on having statements
with the cancelled checks each month, yet it was not
until a statement was rendered for the succeeding month
that it advised the bank of the forgeries. The depositor
maintained an extensive system of accounting with ex-
pert bookkeepers and this system of accounting would
reflect at once the true balance which it had in any
bank. On the receipt of the statement the depositor
could reconcile the true and bank balances in a few
minutes by taking into account checks that had not been
cashed and deposits in transit. It employed an ex-
perienced bookkeeper whose duty it was to promptly
reconcile the bank balance and, in addition, it employed
outside auditors who were specifically charged with the

duty of checking the accounts of the plaintiff with the bank balance for the purpose of discovering intentional or unintentional errors or mistakes, not occasionally but regularly each month. Following a well known procedure in business, the auditor insisted on having these statements the first thing in order that the balances might be verified and discrepancies disclosed. It seems idle to argue that when Interstate employed an auditor for the purpose of making these monthly examinations it or its employees were not derelict when the examination was not made until the succeeding month. It will also be observed that while the forgery of the names was clever and difficult to detect, it was not skillfully concealed but would be apparent immediately when the balances shown by the books and those in the bank were compared and reconciled. As a matter of fact, when the suspicions of the officers of Interstate were aroused, they discovered the discrepancies in a few minutes.

"What is due diligence in giving a notice ofttimes depends upon the findings of fact in the particular case, but when the facts are fixed, that point is usually a matter of law for the court": *Marks v. Anchor Savings Bank,* supra (p. 310), and many cases therein cited. There is not a disputed fact involved here and the evidence was clear and precise. Consequently, it was for the court to say whether the plaintiff acted with reasonable promptness. Taking into account the business practice of Interstate, its accounting system and available employees, we are unanimously of the opinion that the depositor did not act with reasonable promptness in discovering and reporting the forgery of the December checks to the bank; thirty days' delay was too long.

A further analysis of the evidence discloses additional support for our conclusion. The element of time with respect to the duty of a depositor appears at two points. It is the duty of a depositor to examine the statement and returned checks within a reasonable time, depend-

ing upon the circumstances, and if a forgery is discovered it is his duty to *promptly* report the forgery to the bank. On January 2, 1938, Ray Marien, the forger, was entrusted with the duty of verifying the bank balance as of January 1, 1938, and the cancelled checks and statement were delivered to him on January 2 for that very purpose. His anxiety to get these checks and other evidence support the fair inference that he immediately removed the two forged checks in an endeavor to conceal his crime and he then knew that there was a forged check among those returned by the bank. The last inference is supported by the fact that in his own handwriting Marien made a false reconciliation of the true balance and bank balance by charging the discrepancy to deposits in transit.

Marien was an agent of Interstate and the information acquired by him when entrusted with the duty of verifying the bank balance charged the corporation with knowledge of those facts. Where an agent entrusted with the examination of statements and returned checks is also the forger, the depositor is charged with knowledge of the facts acquired in the course of such examination. The specific question was considered by our Supreme Court in *Myers v. Southwestern Nat. Bk.,* supra. There a bookkeeper of the depositor was the forger and was entrusted with the duty of examining bank statements and cancelled checks. The court said (p. 12) : "While the plaintiff was not chargeable with the knowledge of his clerk that the latter had committed the forgery, he was clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was intrusted, viz.: to receive the checks from the bank, take them to his employer's office, compare the amounts thereof with the amounts in the bank book and check book, etc."

The default alleged here was not a delay in examining the checks but in reporting the forgeries. When a forgery is actually detected there is ordinarily much

less excuse for delay than there would be in making the examination. Once it is known that the depositor's signature has been forged there is ordinarily no excuse for delay and there certainly was none such here. Any business man of experience, on discovering a forged check charged to him, would immediately report such a discovery to his bank and he is negligent if he does not promptly do so. The duty therefore devolved upon Interstate to advise the bank of all the circumstances and thirty days was an unreasonable time for the performance of such duty. We therefore hold as a matter of law that under the undisputed evidence the plaintiff was guilty of such delay in advising the bank of the forgeries as to bar its right of recovery for the December checks.

The December checks were delivered to Interstate. "It is essential to the right of action of a depositor in such a case that he return the forged checks to the bank, in order that the bank may protect itself": 9 C. J. S., Banks & Banking, §356 e, p. 751. The law is well settled in this respect in this state. "A depositor should return the forged check at the time of notifying the bank of the forgery: Bank Checks by Brady (1915), section 152, p. 222; Ibid. (1926), section 183, p. 301. 'There must be notice and an offer to return before recovery of payment on any counterfeit instrument, note, bill, or bank note, paid or purchased': *Rick v. Kelly,* 30 Pa. 527; *Roth v. Crissy,* 30 Pa. 145. 'The bank was therefore entitled to have them [the forged checks] examined and, if rejected, returned within a reasonable time. That was not done, and because of plaintiff's failure to perform his duty in that regard, he should not be permitted to recover': *McNeely Co. v. Bank of North America,* 221 Pa. 588, 597. Of course, a bank may waive its right to have returned to it checks bearing forged endorsements by not making a demand for them or by repudiating liability without requesting an examination of them: *United States v. National Bank of Commerce,* 205 Fed. 433; *Kearny v. Metropolitan*

*Trust Co.*, 97 N. Y. Supp. 274": *Showers v. Merchants Natl. Bank*, 293 Pa. 241, 243, 142 A. 275.

It is true that the checks were probably destroyed by Marien but he was the agent of Interstate and not of the bank. The bank not only did not waive the right to have the forged checks before payment of the money but demanded possession of them. Nathan Silverston, an officer of plaintiff, testified that two officers of the bank, about February 2, advised him that it would be necessary for Interstate to produce the checks to them before a refund would be made. There was not the slightest evidence indicating any waiver by the bank of its rights in this respect.

Did the depositor forfeit its right of recovery for the January checks by reason of its failure to advise the bank of the December forgeries before the checks were cashed on January 12 and January 26? On January 2, Interstate was chargeable with knowledge that two forged checks were included among the checks returned to it by the bank; that Ray Marien, their own agent, was at least a party to the perpetration of the forgeries; that he had access to their books; and that blank checks and stubs from the back of the book had been used in the perpetration of the forgeries. Plaintiff would certainly not have permitted him to have access to the books after that date. The missing checks were numbered so that they could be readily identified. As we have heretofore seen, it was the duty of Interstate to promptly advise the bank of the forgeries in order that it might protect itself as to the checks paid in December, but upon the same principle it was its duty to avoid negligent conduct affecting its relations with the bank. For the same reason that the bank was entitled to prompt notice to protect itself from the consequences of a forgery already committed, it was entitled to protection against a repetition of the same fraud. We can come to no other conclusion than that the negligent conduct of the depositor was a direct and proximate cause of the payment of the checks forged in January.

Ordinary care upon the part of Interstate would have prevented a repetition of the same offense and there was even more reason for prompt action for the protection of the bank as to future forgeries than there was with respect to those that had been committed.

The depositor did not deliver the January checks to the bank although it was requested so to do. However, those checks were delivered to the district attorney in New York in order to secure the arrest and conviction of Marien. In view of the virtual request of the bank to Interstate that Marien should be prosecuted, we think the depositor was justified in delivering the checks to the district attorney. However, Marien plead guilty on October 25, 1938, the case was not tried until December 13, 1938, and the checks were retained by Interstate until the trial. In view of the fact that there is no evidence that defendant was denied access to the checks, we prefer to rest our conclusion on the grounds first stated.

Judgment reversed and here entered for the defendant.