[PHILADELPHIA, FEBRUARY 2, 1832.]

## SMYTH *against* HAWTHORN.

### IN ERROR.

The endorser of a promissory note cannot contest the right of a surviving partner to sue upon it as such, and call upon him to show the consideration he paid for it, or the manner in which it came into his possession, upon an allegation that it belonged to the deceased partner in his individual capacity, where it does not appear that the administrator of the deceased partner denies that the interest is vested in the plaintiff as surviving partner; and even if the note did belong to the deceased partner in his individual right, the presumption is, in the absence of proof to the contrary, that the plaintiff came honestly by it for a full and valuable consideration.

It is sufficient proof of the delivery of a notice, that it was sent in a letter by the post, without proving that the letter was received; provided the delivery be on the day, on which the notice should be given.

A duplicate original, or copy of a notice is good evidence without notice to produce the original.

And where a written notice has been given, but no duplicate or copy kept, it is not requisite to give notice to produce the notice.

Where a promissory note became due in New York on Saturday when it was protested, and on the following Monday the notary enquired, where the defendant, who was the first endorser, resided, of a subsequent endorser, who only knew that he resided out of the city of New York, and went to a former holder of the note to obtain information, and on the following day notice of the dishonor of the note was sent through the post office to the defendant in Philadelphia, *Held*, that the notice was sufficient to render the defendant liable.

What is sufficient notice to an endorser of the dishonour of a promissory note, and what dispenses with notice, when it has not been given.

On a writ of error to the District Court for the city and county of *Philadelphia*, it appeared that this action was brought by the defendant in error, *John N. Hawthorn,* as surviving partner of the late firm of *M'Clintock, Hawthorn & Co.* to recover the amount due upon a promissory note, drawn by *John G. Gannon* in favour of, and endorsed by *John Smyth,* the defendant below and plaintiff in error, for three hundred and sixteen dollars, and twenty-five cents, dated *New York, February 9th,* 1826, and payable six months after date.

On the trial in the court below the plaintiff offered in evidence the depositions of *William Seaman* and *John M'Quade,* to prove that he had received the note in question from *M'Clintock* after the dissolution of the partnership; that a letter had been written by *M'Quade* to the defendant below, and put into the post office at *New York* on the 15th of *August,* 1826, directed to the defendant in *Philadelphia,* informing him that the note had not been paid, and that it had been returned by *M'Quade* to *M'Clintock.* This evidence was objected to by the counsel for the defendant, because no notice had been given to him to produce the letter, and because the contents and words of the letter were not set forth in the depositions.

The Judge before whom the cause was tried overruled the objection, and admitted the evidence, which was the first error assigned in this court.

The defendant below then produced and gave in evidence a letter from the plaintiff below to him, dated *October* 30th, 1826, in which the plaintiff declared, that he was the legal representative of *M'Clintock* then deceased, and another letter from the plaintiff to him dated 5th *April,* 1827, in which he declared that the firm of *M'Clintock, Hawthorn & Co.* had been dissolved on the 9th of *November,* 1825. The defendant further proved, that after the dissolution of the firm, *M'Clintock* continued to reside in *New York,* and transact business on his own separate account; that he received consignments from the defendant, and transacted business with him, and that he died in the month of *September,* 1826. After having established these facts the defendant gave in evidence two notices to the plaintiff to prove the consideration paid by him for the said note, and the manner in which it came into his possession.

The plaintiff then proved that *M'Clintock* was largely indebted to the firm of *M'Clintock, Hawthorn and Company,* and also produced a statement in the handwriting of the defendant, as follows, *viz.*

" Balance due by *M'Clintock, Hawthorn & Co.* as
furnished      -      -      -      -      -      $ 20,39
    *J. G. Gannon*'s note      -      -      -      -      -      316,25

                                       336,64
Cash received at sundries      -      -      -      -      310,53

                                       26,11
    *J. G. Gannon*'s note protested      -      -      -      316,25

                                       $290,14

The counsel of the defendant contended in the court below, 1. That the note in question had been passed to *M'Clintock* individually, after the dissolution of the firm of *M'Clintock, Hawthorn & Co.* and could not be recovered by the plaintiff as surviving partner.

2. That under the circumstances of the case, it was necessary for the plaintiff to prove the consideration paid by him for the note, and the manner in which it came into his possession.

3. That sufficient legal notice had not been given to the defendant of the non-payment of the note by the maker.

His Honor instructed the jury substantially as follows:—That the note, on which this action was brought, was a note with a blank indorsement to which the law attributed a character of the most sacred kind: That it was of the utmost importance to the commercial world that a note of this kind should pass free and untrammelled from hand to hand, and that if it were not so the operations of business would be greatly impeded: That the law permits a note with a blank indorse-

(Smyth *v.* Hawthorn.)

ment to pass by delivery even after it has been dishonoured, but in that case the holder takes it subject to all defences to which it would have been subject to in the hands of the payee : That " the posses-sion of the note by the plaintiff in this instance was sufficient *prima facie* to entitle him to recover, and the defendant cannot call upon the plaintiff to prove the consideration paid, and the manner in which the note came into his possession, without a ground of suspicion hav-ing been first made to appear, which has not been done on the part of the defendant in this case ; the plaintiff's possession of the note is therefore in this respect sufficient to entitle him to recover, if he can make out his case in other respects. But the holder of the note when due is bound to make a demand for payment on the maker, and upon his neglect or refusal to pay to give notice thereof to the indorser in a reasonable time, and though the indorser may not be able to show that he has suffered, because of the holder's delay in giving him notice, he may still stand upon his rights, and if he has not received such timely notice as the law says he is entitled to, he is discharged and your verdict must be for the defendant. Is that the case here ? the maker had the whole of the 12th of *August,* the last day of grace, to take up the note ; the 13th was Sunday ; on Mon-day the 14th *August,* if the indorser had come forward, his contract would have been complied with ; Monday was therefore the first day, on which the indorser was liable. It is very true, that strictly speak-ing, notice should generally be sent by the next mail. The law re-quires that the holder should use due and reasonable diligence. This is a question of fact for your decision, and must depend upon the special circumstances of the case. Mr. *Seaman,* the notary, on Mon-day morning, inquires of *McQuade* as to the place of the defendant's residence. *McQuade* only knew that he resided out of the city of *New York,* but did not know where ; and goes to receive information from *McClintock ;* the same day he goes to *Gannon*'s house again to demand payment. This was an act of favour to the indorser of which he cannot reasonably complain. And on the next day, viz. Tuesday, the 15th, he puts into the post office a notice to the defendant residing here. Was this reasonable diligence ? I leave it to you to judge, under all the circumstances of the case. The defendant denies that he ever received such notice. If the notice was put into the post-office in proper time, it is all the law requires. There is no proof of its miscarriage ; it rests on the defendant's assertion only. If it mis-carry, it is the defendant's misfortune, but the plaintiff in this case having done all the law required of him by putting it into the post office, is not to be held responsible for it, if he put it in in proper time, which you will judge."

Errors were also assigned in this court in the charge thus given to the jury.

*Chew,* for the plaintiff in error, cited 1 *Starkie,* 357. 359. 371. 373. *Dennis* v. *Barber,* 6 *Serg. & Rawle,* 420. *Patton's Adm'r.* v. *Ash,* 7

(Smyth *v.* Hawthorn.)

*Serg. & Rawle,* 116. *Campbell* v. *Wallace,* 3 *Yeates,* 271. *M'Kee* v. *Reiff,* 4 *Yeates,* 340. *Whart. Dig.* 303. *no.* 375. *Smedes* v. *Utica Bank,* 20. *John. Rep.* 372. 3 *Cow.* 662. *United States* v. *Barker's adm'x.* 4 *Wash. C. C. Rep.* 469. 12 *Wheat.* 559.

*W. M. Meredith,* for the defendant in error, cited 2 *Phill. Ev.* 19, 20. *Smith* v. *Bank of Washington,* 5 *Serg. & Rawle,* 322. *Stewart* v. *Allison,* 6 *Serg. & Rawle,* 329. 6 *Wheat.* 104. 13 *John. Rep.* 470. 3 *Pick.* 180. *Leazure* v. *Hillegas,* 7 *Serg. & Rawle,* 320. *Williams* v. *Smith,* 2 *Barn. & Ald.* 501. 1 *Chitty on Bills,* 279.

The opinion of the court was delivered by

ROGERS, J.—The possession of the note was *prima facie,* sufficient to entitle the plaintiff to recover; and we fully agree with the District Court, that no circumstances of suspicion were exhibited, which would make it necessary to prove the consideration paid, or the manner in which the note came into the possession of the plaintiff. This was the case of a note, endorsed in blank, which passes by delivery, so that possession is such evidence of title as to authorise a payment to the holder. This is a singular defence; the indorser undertakes to contest title to the note, when so far as we judicially know, the administrators of *M'Clintock* do not pretend to deny, that the interest is vested in the plaintiff as the surviving partner of the firm of *M'Clintock, Hawthorn & Co.* Even, if the note did belong to *M'Clintock,* in his individual capacity, (which is at least doubtful,) we are bound to presume, in the absence of a shadow of proof to the contrary, that *Hawthorn* came honestly by it for a full and valuable consideration.

It is sufficient proof of the delivery of a notice to show, that it was sent in a letter by the post, without proving that the letter was received, provided the delivery be on the day on which notice should be given. *Saunderson* v. *Judge,* 2 *H. B.* 509. *Scott* v. *Lifford,* 9 *East,* 347. *Smith* v. *Mullet,* 2 *Camp.* 208. The presumption is a fair one, that the letter reaches its destination in due time; and whether it does or not, this is all the law requires; it would be extremely inconvenient to require more. This has been admitted, and it has also been conceded, that where a duplicate original or copy of the notice has been kept, it is good evidence without a notice to produce it. *Kine* v. *Beaumont,* 3 *B. & B.* 288. And where a written notice has been given, but no duplicate or copy kept, it is not requisite to give a notice to produce the notice of dishonour. In *Ackland* v. *Pearce,* 2 *Campb.* 601, *Le Blanc,* J. admitted parol evidence of the contents of the notice, without a notice to produce it, and the court refused a new trial. 7 *B. Moore,* 112. *Colling* v. *Treweek,* 6. *B & C.* 394. It is true that in *Langdon* v. *Hulls,* 5 *Esp.* 156, a contrary doctrine was held, but I think, upon insufficient reasons. Where the letter has been received, there can be no danger in admitting parol evidence, without notice, as any mistake in the proof may be corrected by production of the original, and as notice is part of the plaintiff's

(Smyth *v.* Hawthorn.)

title, an indispensable prerequisite to recovery, in most cases, he may be presumed to be ready to do so. *Le Blanc* compares it with a notice by a landlord to his tenant to quit, which may be always proved, without notice to produce the original notice. If fraud is intended, this can be as well asserted by a simulated copy as by any other species of proof. Of this the jury must judge.

But it is said, that the notice was not in time to fix the indorser. The facts were these. This was a note dated *New York, February* 9th 1826, at six months for three hundred and sixteen dollars, and twenty-five cents, drawn by *John G. Gannon* in favour of, and indorsed by *John Smyth.* The note passed into the hands of *M'Clintock* and then to *M'Quade;* it was then deposited in bank for collection, and by them was presented for payment. The last day of grace was Saturday, the 12th *August,* when it was protested; the 13th was Sunday. On Monday the 14th the notary enquired of *M'Quade,* who was an indorser, and of course liable to the bank, where the defendant *Smyth* resided. *M'Quade* only knew, that he resided out of the city of *New York,* and went to receive information from *M'Clintock.* The next day, the 15th, he put the notice into the post office at *New York.* The law is founded in reason, and does not require impossibilities; *M'Quade* could not give notice to *Smith* until he had himself notice of the dishonour of the bill. The next day after he received the necessary information, notice was sent by the post to the defendant. It is of great consequence to the commercial world, that there should be some certain, precise and fixed rule in relation to the time, when notice should be given. The general rule with regard to inland bills is, that where the parties do not reside in the same town, it is sufficient to send notice by the post of the day following that on which the party receives intelligence of the dishonour. *Williams* v. *Smith,* 2 *B. & A.* 497. 20 *John. Rep.* 372. 3 *Cowan,* 662. 4 *Wash. C. C. Rep.* 469. *M'Quade* an indorser, and as such liable to the bank, receives notice on Monday, the note having been protested on Saturday, Sunday intervening, and on the following day he sends by the post notice to *Smyth.* The holder of a protested bill is not bound to give all the parties to the bill notice; he may be satisfied with his immediate indorser. The law then allows him to give notice to others, when he may wish to render them liable, and it is in time to do so, the next day after he receives intelligence of the dishonour of the bill. And this is the principle of *Wright* v. *Shawcross,* reported in a note to *Williams* v. *Smith,* 2. *B. & A.* 501. The case was this. A bill had been drawn by *P. B.* on Messrs. *L. R. & Co.* and was dated the 1st *June.* It had been delivered without being indorsed by the defendant to the plaintiff. It was presented for payment in *London* on the 3d of *April.* On the 4th of *April* a letter was written to the plaintiff, informing him of it, which he received on the 6th of *April,* being Sunday. On the Tuesday evening notice by the post was sent to the defendant. The court held that the plaintiff was not bound to open the letter from *London* until Mon-

(Smyth *v.* Hawthorn.)

day morning, and that taking him to have received notice of the dishonour at that time, he had done quite sufficient in transmitting it to the defendant by the next day's post. The bill was protested the third, and the notice was not put into the post office until the 8th, notwithstanding which the court held the defendant liable.

The evidence in this case furnishes proof that notice of the dishonour of *Gannon*'s bill was received, which was deemed sufficient. A statement of the accounts in the hand-writing of the defendant shows this fact, which if the case needed it, would show that *Smyth* here dispensed with notice, and this defence was an afterthought, for which perhaps he is indebted to the ingenuity of his counsel. An acknowledgment by a drawer, who has become bankrupt, made after his bankruptcy that the bill would not be paid, will supercede the proof of notice. 13 *East*, 213, *Brett* v. *Levett.* So a letter from the drawer of an accommodation bill, stating that it would be paid before next term. *Wood* v. *Brown*, 1 *Stark.* 217. So a promise after dishonour of the bill to pay if the holder would call again. *Lundie* v. *Robertson*, 7 *East*, 231. So where the drawer of a foreign bill of exchange, on being told it was dishonoured, says that his affairs are at this moment deranged, but that he would be glad to pay it, as soon as his accounts with his agent are cleared, this admission will dispense with proof of a protest. *Gibbon* v. *Coggan*, 2 *Campb.* 188. *Greenway* v. *Hindley*, 4 *Campb.* 52.

Besides, the want of due notice is answered by showing the holder's ignorance of the place of residence of the party whom he sues; and whether he used due diligence to find the place of residence, is a question for the jury. *Bateman* v. *Joseph*, 12 *East*, 433, and *Baldwin* v. *Richardson*, 1 *B.* & *C.* 245. Inquiry was here made of one of the parties to the bill, which brings it within the case of *Beveridge* v. *Burgis*, 3 *Campb.* 262. And it has even been decided, that calling on the last indorser, and last but one, the day after the bill becomes due, to know where the drawer lives, and on his not being in the way, calling again the next day, may be sufficient. *Browning* v. *Kinnear*, 1 *Neil Gow. N. P. R.* 81.

Judgment affirmed.