## HALY *v.* BROWN.

The question of due diligence in seeking to give notice of the dishonour of a note is for the court, the facts being undisputed.

A notice deposited in the Philadelphia post-office, addressed to an endorser generally, is insufficient when he resides in Roxborough, and the nearest post-office, at which it is his custom to receive letters, is at Manayunk.

To excuse a want of notice by reason of ignorance of an endorser's residence, such ignorance and due diligence to discover it must be shown on the part of the owner of the note deposited for collection, as well as of the notary and bank.

Sending a notice for an endorser to his subsequent endorsee, is equivalent to an inquiry of the endorsee by the notary for the residence of the endorser, and it is the duty of the endorsee to use due diligence in forwarding the notice to his endorser.

IN error from the District Court of Philadelphia.

*April* 13. This was an action against the payee of a note, on his endorsement in blank, the plaintiff being the next endorser. On

the trial before PETIT, P. J., the plaintiff gave in evidence the protest of the notary on behalf of B. Smith, the former cashier of the Bank of Pennsylvania, in which was the usual averment of notification to the endorsers.

The defendant then called the notary, who stated that his mode of notifying these endorsers was by sending a clerk to the plaintiff, with a notice addressed to him, and one to defendant, with instructions to leave both with plaintiff. That he also put a duplicate notice in the post-office, addressed to defendant generally. That he could not learn defendant's residence after inquiry, which was made at the post-office, and of the carriers only. The Directory was also examined. He said it was the custom of notaries, where the endorser was unknown, to send a notice for him to the endorsee; and that he also put a duplicate notice in the office, and examined the Directory.

The defendant then proved that he was a dyer, whose business was conducted at Roxborough, in this county, where he had also resided for upwards of six years, and that he was well known there and among commission merchants in the city. That he was in the habit of coming into town once a week, when he put up at the Plough Tavern, where notes from merchants in town, and letters from Europe, addressed to him at that house, were left by the post-office carriers; but that letters by the post were received by him at the Manayunk office, which was the next post-office to his residence. The court rejected evidence of the drawer's circumstances and defendant's belief that the note was paid, and that he could have secured himself had he known of the dishonour at the time.

The plaintiff then proved by the notary's clerk, that when he made the demand at the drawer's place of business, he inquired of his clerk for defendant, but could learn nothing; that he then examined the Directory, and inquired of the letter-carriers. The result of these inquiries being reported to the notary, notices were sent as before mentioned. He further said, he made all the inquiry he could for defendant,—all that was usual.

It was agreed on both sides in the argument, though the record did not show it, that the plaintiff was the owner of the note at maturity, the protest being in the name of the cashier of the bank where it was deposited for collection.

The court told the jury that, if the notary was ignorant of the residence of the endorser, he must use due diligence to find it, and notify him. The question of due diligence to find the address of the endorser, and transmit him notice under the circumstances, was left to the jury.

The case was argued at a former term by *J. Fallon* for the plaintiff, and *Laycock* and *Bouvier* for defendant, and now by

*C. Fallon*, for plaintiff in error.—The question of due diligence could not arise on the facts, for there was no evidence of any attempt on the part of Brown, who was the real holder, to give the notice.   But apart from this, was there evidence of due diligence? It is a question of law, and the court must decide when all the facts are proved without contradiction; Kramer *v.* McDowell, 8 Watts & Serg. 138; Brenzer *v.* Wightman, 7 Watts & Serg. 264; Jones *v.* Wardell, 6 Watts & Serg. 401; Brittain *v.* The Bank, 5 Watts & Serg. 98.   It was shown that the defendant received his letters at another post-office nearer his residence, and the fact that he was unknown to the carriers proves that a letter addressed to him generally would never reach him in the city by the carriers.

To make a notice through the post-office sufficient, it must be with a proper direction; Weakly *v.* Bell, 9 Watts, 273; Ireland *v.* Kip, 10 Johns. 490, 11 Johns. 231.

There was not evidence of sufficient inquiry for the residence of the endorser.   It is not enough if made of the directors of a discounting bank for the residence of a drawer; Stuckert *v.* Anderson, 3 Whart. 116; but it must be made of the parties, for the presumption is, every party knows his immediate party's residence; Chitty on Bills, (ed. 1842,) 453, n. 3; Story on Promissory Notes, sect. 316; Hill *v.* Varrell, 3 Greenleaf, 233; Moore *v.* Somerset, 6 Watts & Serg. 262; and all the parties who are known, must be inquired of until some one is found who does know the residence of the others; Spencer *v.* Bank of Salina, 3 Hill, 520.

*Bouvier*, contrà.—The plaintiff is not presumed to know the residence of his immediate endorser.   The only case where this doctrine is asserted, is Moore *v.* Somerset, and that was between drawer and payee, but the present is a note bought in the market on the responsibility of some one party perhaps.   The numerous cases on this point show that such presumption does not exist; Story on Promissory Notes, sect. 316; Chapman *v.* Lipscombe, 1 Johns. 294.   Such a rule is calculated to impair the value of commercial paper.

The court declined hearing a reply.

Rogers, J.—It is a rule of commercial law, that when facts are ascertained and undisputed, what shall constitute due diligence in communicating notice of the dishonour of a bill or note, is matter

of law to be decided by the court; Brenzer *v.* Wightman, 7 Watts & Serg. 264; Jones *v.* Wardell, 6 Watts & Serg. 401; Brittain *v.* The Doylestown Bank, 5 Watts & Serg. 98; Spencer *v.* Bank of Salina, 3 Hill, 521. It would seem, therefore, that as there were no unascertained facts, the court erred in submitting the question of due diligence to the jury. But if they ought to have instructed the jury in accordance with the verdict no injury was done to the defendant, and this renders it necessary to inquire, whether due diligence was proved on the part of the notary, or the holder of the bill.

There are some principles of commercial law so well settled, as not, at this day, to need the aid of authority. Thus a notice of the protest of a bill of exchange or note, to be given by one to another who resides in the same city, must be served personally, or by leaving it at his house or place of business; depositing it in the post-office directed to him, is not sufficient. But when they reside in different places, a notice of protest sent by mail and directed to the endorser, at the nearest post-office, is sufficient, and if properly directed, it is good, although the letter containing it should miscarry; 11 East, 117; 3 Rawle, 355; 9 Watts, 279. Here the notice was clearly insufficient, for the endorser resided in Roxborough Township, in the county, and the nearest post-office, and the place where his letters on business were addressed to him was to the Manayunk post-office, and the letter containing the notice was put in the city post-office, with a direction to the defendant, without more. But it is said he is excused from giving the notice in the ordinary way, because the notary whom he employed for the purpose was ignorant of the endorser's residence, and that he used due diligence to find it and notify the endorser. If this be true, he is entitled to the benefit of the exception, but of this allegation we should have some proof. The note in suit was put into bank for collection merely. The plaintiff, Brown, was the owner and holder of the bill, consequently the notary, so far as regards this transaction, was his agent, as well as the agent of the bank. It was, therefore, the duty of Brown, either by himself or his agent, to give the defendant notice, or to show that he as well as the notary was ignorant of his place of residence, and that he also used due diligence to discover where the endorser was to be found.

The holder of a bill of exchange, as is ruled in Preston *v.* Daysson et al., 7 Louis. Rep. 11, cannot avail himself of the ignorance of the notary, as to the residence of the endorser and consequent neglect in giving notice of the protest. If he knows, he must

Q

disclose their residence, as. it seems his neglect will discharge the endorsers.

When a notary is employed, it is the duty of the holder to inform him of the endorser's place of residence, and if this be omitted, the notary ought to apply to all the parties to the bill for information, and especially to the holder himself; Hill *v.* Varrell, 3 Greenleaf, 233.   If the residence of the party to whom the notice ought to be given be not known to the holder, he must nevertheless not remain in a state of passive and contented ignorance, but must use diligence to discover his residence; Chitty, 453.   It appears that a demand was made at the maker's place of business, and that an inquiry was made without success, of his clerk, where the defendant resided; that the notary looked into the Directory, and inquired in vain of the letter-carriers at the post-office.  Whereupon, according to the custom of notaries, as he says, when they do not know the residence of the endorser, he sent a notice to the endorsee, and at the same time a notice enclosed to the endorser. Had the notary inquired of Brown, the probability is, he would have been at no loss as regards the residence of the defendant, but instead of doing this, he does what is equivalent to it, by sending the notice for Haly to Brown, which devolved on Brown, in a reasonable time to send the notice of the dishonour of the note to the defendant.  But was Brown, as is said, ignorant of his place of residence?   It may be so, but of this we ought to have some proof, however slight.   He cannot remain, as we have already said, in a state of passive or contented ignorance. .

It is ruled that a maker is presumed to know the residence of the payee, and it would seem to me that a holder is presumed to know the abode at least of his immediate endorser.   It is true, that in the case of a note endorsed in blank, the presumption is not so strong, and may of course be more readily rebutted, yet it exists notwithstanding.   When a bill is taken in the ordinary course of business, it is usual to inquire, not only as to the ability of the parties to the bill, but also as to their place of residence, so far at least as to ascertain whether they live in the same city, county, or state, for that frequently, for divers reasons, will affect the value of the bill.   It is difficult to believe, in the case on hand, that Brown did not know where Haly resided, and if he was ignorant of that fact, it is still more improbable he could not have ascertained his abode with ordinary diligence, so as to have given him timely notice of the dishonour of the note.   Why this was omitted we are not informed.   That it was material that the defendant should have

notice, appears from the fact, that he offers to prove that if he had been informed of the dishonour of the bill he could have protected himself from loss.

Judgment reversed; and a *venire de novo* awarded.