# Lesley, Appellant, *v.* Ewing.

*Banks and banking—Check—Forgery—Notice to bank of forgery—Evidence.*

1. A depositor in a bank must act promptly in notifying the bank if he intends to demand payment of the amount paid on a forged endorsement.

2. In a suit by a depositor against a bank to recover an amount alleged to have been improperly paid on a forged endorsement of the payee's name, judgment for defendant n. o. v. was properly entered, where it appeared that the check in question was given by the plaintiff in payment of the purchase price of a mortgage in

1907; that in July, 1911, plaintiff received notice that the mortgage was supposed to be a forgery and that he had positive knowledge of this fact prior to October, 1911; that on October 10th, he received the cancelled check from the defendant but gave no notice to it of the forged endorsement until December 12th.

3. In such case evidence in explanation of the whole transaction is admissible.

Argued Jan. 20, 1915. Appeal, No. 326, Jan. T., 1914, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., March T., 1912, No. 6200, n. o. v., in case of Hugh Lesley v. J. Hunter Ewing, Thomas L. Elwyn, and William E. Whelen, who were with Henry Whelen and Charles C. Whelen, late trading as Townsend, Whelen & Company. Before MESTREZAT, POTTER, ELKIN, MOSCH-ZISKER and FRAZER, JJ. Affirmed.

Assumpsit to recover amount paid on forged endorsement of check. Before RALSTON, J.

The facts appear in Lesley v. Ewing, 244 Pa. 480, and in the opinion of the Supreme Court.

Verdict for plaintiff. The court subsequently granted defendant's motion for judgment n. o. v. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for the defendant n. o. v.

*C. Wilfred Conard,* with him *Owen J. Roberts,* for appellant.

*Walter George Smith,* with him *William Rudolph Smith,* for appellee.

OPINION BY MR. JUSTICE ELKIN, February 8, 1915:

When this case was here before the judgment was reversed with a venire upon the sole ground that too much latitude was allowed in the cross-examination of a certain witness: Lesley v. Ewing, 244 Pa. 480. No other

question was considered by this court for the reasons stated in that opinion, and there was not the slightest indication that the case should be treated otherwise than de novo upon its merits when retried. The fact that the judgment was reversed with a venire facias de novo did not necessarily mean that the case must be submitted to the jury without regard to the legal rights of the parties. In that case the jury returned a verdict for defendants, and a judgment having been entered thereon, plaintiff appealed. Improper cross-examination was the principal matter complained of by the assignments of error in that case, and no other question was decided upon that appeal. At the second trial the error pointed out by this court relating to the cross-examination of a witness was corrected and the case was tried upon its merits. The real point in controversy now is whether upon the established facts at the second trial the case was for the jury or for the court. A brief recital of the facts will be helpful to a proper understanding of the question involved. Lesley had money to loan and Futrell, a friend and an attorney, recommended a first mortgage upon certain real estate as a good security. Before making the loan Lesley went upon the ground and looked over the property. He was satisfied with the security and agreed to purchase the mortgage. The owner of the property was represented to be one Buzby, who was unknown to Lesley. Lesley made no inquiry of Buzby, nor of any one else, but relied solely upon the representations made by his friend Futrell. He made out his check for $4,000, payable to the order of Buzby, handed it to Futrell, and in due time received a mortgage in the same amount purporting to be executed by Buzby upon the property which he had examined. This all occurred in 1907. Futrell paid the interest as it accrued upon the mortgage until August, 1910, after which no interest was paid. In June, 1911, Futrell informed Lesley "that he was in trouble and that the mortgage was of more or less questionable value." In July, 1911,

Lesley was informed that the mortgage was a forgery. After being so notified he admits in his testimony that: "I didn't do anything, I thought simply that my money was gone, I had lost my money and that was all there was to it." His cancelled checks during all of this time remained in the banking house of the defendants where he kept his account. He had received statements of his account from time to time since 1907, but had never taken the trouble to get his cancelled checks which remained in the hands of his bankers until October, 1911. The statements of his account showed that the bank had paid the $4,000 check, and he had this knowledge soon after that check was issued in 1907. He no doubt acted upon the belief that Buzby received the proceeds of the check because it was made payable to his order, but he received notice in July, 1911, that the mortgage was supposed to be a forgery and had positive knowledge of this fact prior to October, 1911. With this positive knowledge that the mortgage was a forgery, he must have known that the check payable to the order of the mortgagor had been negotiated by someone without authority. Throughout the entire transaction he acted upon the belief that the mortgage was genuine; that Buzby, the mortgagor, to whose order the check was made payable, had received the proceeds; and therefore when he learned that the mortgage was a forgery, as a prudent business man, he should have inquired with reasonable diligence about the payment of his check. If someone forged the name of Buzby to the mortgage, and this forged mortgage was purchased by Lesley, whose check was made payable to the order of the forged mortgagor, it is apparent that someone must likewise have forged the endorsement of Buzby on the check before the money was paid upon it; and this fact could not have escaped the attention of the maker when confronted with all of these facts. In this connection it was proper to admit evidence of these facts in explanation of the whole transaction, and also as an aid to the court

in determining whether appellant had used that diligence which the law requires in notifying the bank. On October 10, 1911, Lesley wrote the bank asking for the cancelled checks and a few days later received the same. He had the checks in his possession, subject to the examination of himself and his counsel, until December 12, 1911, when he notified the defendants that the endorsement of Buzby was forged and demanded payment of the amount of the check with interest. In other words he had the check with the forged endorsement in his possession, with knowledge of all the facts hereinbefore stated, for nearly two months before he notified the bank of the forgery and demanded payment. It is true, Lesley testified that he did not positively discover the forgery until the early part of December, but he admits that he had knowledge of all the facts as above stated, and we think that, charged with such knowledge, he cannot escape the rule of law, settled in our State, that he must act promptly in notifying the bank if he intends to demand payment of the amount paid on the forged endorsement. It may be, as contended for appellants, that the rule of law held to be applicable to such cases in our own State is not in harmony with the rule adopted in some other jurisdictions; but we cannot escape the conclusion that the present case is ruled in principle by McNeely Co. v. Bank of North America, 221 Pa. 588; Connors v. Old Forge Discount & Deposit Bank, 245 Pa. 97, and the line of cases upon which these decisions are based.

Having indicated the grounds upon which we base our conclusion, nothing of benefit can be added by discussing the numerous assignments of error which at most can only be regarded as details relating to the principle involved.

The learned court below gave the case very careful consideration and in our opinion the evidence was sufficient to warrant all the findings of fact and ample to justify the conclusions of law.

**Judgment affirmed.**