## Marks, Appellant, v. Anchor Savings Bank.

*Banks and banking—Check—Forged endorsement—Notice of forgery—Delayed notice.*

1. Where a depositor fails promptly to inform his bank of a forgery he will be regarded as having withheld from the bank a substantial right and will be precluded from recovering from the bank, and the latter need not prove that such delay actually resulted in material harm to it.

2. What is due diligence in giving notice in such case frequently depends upon the findings of fact, but when the facts are fixed the question is usually one of law for the court.

3. In an action against a bank to recover an amount paid on a forged endorsement of the plaintiff's name to a check, judgment for defendant non obstante veredicto was properly entered where it appeared that plaintiff knew, or should have known, of the forgery at least forty days before he informed the bank thereof.

Argued Oct. 28, 1915. Appeal, No. 236, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., April Term, 1914, No. 1808, for defendant, non obstante veredicto in case of L. J. Marks v. Anchor Savings Bank. Before Brown, C. J., Mestrezat, Potter, Moschzisker and Frazer, JJ. Affirmed.

Assumpsit to recover amount paid on forged endorsement of check. Before Macfarlane, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $3,243.80 and judgment thereon.

The court subsequently entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*S. A. Schreiner,* of *Schreiner & Loeffler,* with him *I. L. Giffen,* for appellant.—Under the circumstances the delay in notifying the bank of the forgery does not preclude the plaintiff from recovering: Schnable v. Hanover National Bank of the City of New York, 137 N. Y. Supp. 724.

*John D. Brown,* with him *John E. Winner,* for appellee.—Plaintiff knew or should have known of the fraud forty days before he notified the bank thereof and is precluded by such delay in notification from recovering: Lesley v. Ewing, 248 Pa. 135; McNeely Co. v. Bank of North America, 221 Pa. 588; Leather Manufacturers National Bank v. Morgan, 117 U. S. 96; Dana v. National Bank of the Republic, 132 Mass. 156; Cooke v. United States, 91 U. S. 389; Houser v. National Bank of Chambersburg, 27 Pa. Superior Ct. 613; Snyder v. Corn Exchange National Bank, 221 Pa. 599.

OPINION BY MR. JUSTICE MOSCHZISKER, January 3, 1916:

This action was instituted to recover the amount of a certified check which the plaintiff alleged was wrongfully paid by the defendant bank on a forged endorsement of his signature as payee. The verdict was for the plaintiff, but the court below entered judgment non obstante veredicto in favor of the defendant; hence this appeal.

On August 6, 1913, one Samuel Bleier, who at that

time was indebted to the plaintiff, made a promissory note to the latter's order for $3,000.00, due four months after date. The plaintiff endorsed and returned the note to Bleier for the purpose of having it discounted, and he subsequently procured its discount by one Robert E. Price, who gave his check therefor, in the sum of $2,-940.00, payable to the order of the plaintiff and duly certified by the defendant bank. Bleier took this check to the plaintiff and requested him to endorse it, which he refused to do; but on that occasion he saw the check was certified to his order, although he failed to observe the name of the drawer or drawee. The next day, August 7, 1913, the check, endorsed with what purported to be the plaintiff's signature, was deposited by Bleier in the defendant bank to the credit of the Victor Banking Company, an institution of which he was then the cashier. Some time after the plaintiff had refused to endorse the check, Bleier told him it had been returned to its maker and the note destroyed; but in the beginning of the following January, if not earlier, the plaintiff had definite knowledge the note was still in existence and that its holder was insisting it had been properly discounted for value; more than this, on or before January 2, 1914, the plaintiff knew who drew the check, and further that, after the day when he had seen it, certified to his order as payee in Bleier's possession, that gentleman had become a defaulter. Notwithstanding his knowledge of all these facts, the plaintiff did not inquire of Mr. Price, its maker, concerning the check, nor did he take any other means of ascertaining its whereabouts or the name of the institution upon which it was drawn, either for his own protection or that of the certifying bank. Finally, however, on February 9, 1914, at a meeting of arbitrators, in a suit against the plaintiff to recover on the discounted note, the check in question, with the false and fraudulent endorsement thereon, was produced; but even then the plaintiff waited till February 12th before informing the defendant bank of the forgery, and it had no notice or

suspicion that anything was wrong until that date. There was some proof that Bleier, who was not called as a witness, had absconded, but just when this occurred did not appear.

The defendant contended that the plaintiff had authorized Bleier to endorse the check and to receive the proceeds; but we assume this not to be true, for the present appeal must be determined alone on the evidence produced by the plaintiff, and the facts as we have given them are taken entirely from his side of the case. It is established in law that the certification of a check transfers the funds represented thereby from the credit of the maker to that of the payee, and that, to all intents and purposes, the latter becomes a depositor of the drawee bank to the amount of the check, with the rights and duties of one in such a relation: Girard Bank v. Bank of Penn Township, 39 Pa. 92, 99; Central Guar. Tr. & Safe Dep. Co. v. White, 206 Pa. 611, 614. In several recent cases, we have discussed the duty of a depositor when a forgery has been perpetrated in connection with a check to which he is a party. In Myers v. Southwestern Nat. Bk., 193 Pa. 1, 11, 12, where a confidential clerk committed the forgeries, we said that the depositor could have gained knowledge of the fraud had he examined his cancelled checks and made proper comparisons, etc., and we held that, since he did not perform these duties, and thus ascertain the facts which he could have discovered and imparted to the bank, there could be no recovery. In McNeely Co. v. Bank of North America, 221 Pa. 588, 594, the present Chief Justice, after an exhaustive study of the whole subject, speaking for this court held that, when a depositor fails promptly to notify his bank of a forgery, he must be regarded as having withheld from it a substantial right, without regard to what might or might not have resulted from a prompt exercise of that right, for it is sufficient to know that such delay on the part of a depositor might well prejudice the bank, and it is not necessary for the

latter to prove that it in fact did work material harm. In Connors v. Old Forge Discount & Dep. Bk., 245 Pa. 97, 101, a depositor sued his bank to recover the amount of a check paid on a forged endorsement of the payee's name. A nonsuit was entered because of a failure promptly to inform the defendant of the mispayment. It appeared that the depositor had substantial grounds for suspicion, and actually did suspect the fraud about June 23d, or 42 days before he sent word to the bank, but it did not appear that he was certain of the forgery until the fourth day before such notice. In sustaining the nonsuit, we said: "Notice was given August 5th, forty-two days after June 23d when the plaintiff must have known that the endorsement of the payee was void. It is idle in him now to contend, as he does, that he did not then know that the forgery had been perpetrated." Lesley v. Ewing, 248 Pa. 135, 138, 139, is another instance where a depositor sued to recover the amount of a check paid on a forged endorsement of the payee's name. While all of the dates are not stated in the report of that case, yet, an examination of the testimony shows them to have been as here given. It appears that the check there in question was issued February 7, 1907, to cover an investment by the depositor in a mortgage. In July, 1911, he received word that the mortgage was of doubtful validity, and positive knowledge of the fact that it was a forgery came to him prior to October, 1911. On October 10, 1911, he wrote the bank asking for his cancelled checks, which were promptly sent to him. The depositor said he first knew that the check was a forgery on December 7, 1911. December 11, 1911, he notified the bank that he "was afraid the signature had been forged"; and the next day he definitely informed it of the forgery. In holding there could be no recovery we said that, with the knowledge in October, 1911, "that the mortgage was a forgery, he must have known the check payable to the order of the mortgagor had been negotiated by some one without authority." In Union Nat.

Bk. v. Franklin Nat. Bk., 249 Pa. 375, 389, reviewing these cases, we said "the depositor was bound to give immediate notice of the forgery, and that the courts would not enter upon a speculative inquiry as to whether the bank could have bettered its condition if prompt notice had been given." While, perhaps, in the last case the use of the word "prompt" might have been more suitable than "immediate," yet in McNeely Co. v. Bank, supra, at p. 594, we said it was the duty of a depositor to send notice of a forgery to the bank "at once."

On the foregoing authorities, it is clear that the plaintiff failed in his duty of due diligence toward the defendant. At least 40 days before he notified the bank of the forgery, he was aware that the note was in existence and that a fraud had been perpetrated upon him in connection therewith; yet, instead of following up this knowledge and taking advantage of the known sources of information at hand, which course would have disclosed the fact of the forgery and the name of the bank upon which the check was drawn, he saw fit to gain time for himself by filing an affidavit of defense, "on information and belief," in the suit which was then pending against him on the note, wherein he endeavored to explain away the probability of the check having been used. If, in making this defense, the plaintiff depended for his information upon the previously mentioned conversation with Bleier, in which the latter is alleged to have informed him that the note had been destroyed and the check retired, he knew at the time of the affidavit, that as a matter of fact, the note had not been destroyed, and, under the circumstances at bar, he cannot now contend he was ignorant of the true facts concerning the check. On the contrary, it must be held that the plaintiff failed to exercise due diligence and was so negligent as to preclude him from asserting a lack of knowledge which he could have had for the asking. The appellant contends, however, that the question of the plaintiff's lack of diligence, or negligence, was an issue for the jury

and not for the court. What is due diligence in giving a notice ofttimes depends upon the findings of fact in the particular case, but when the facts are fixed, that point is usually a matter of law for the court: Haly v. Brown, 5 Pa. 178; Natl. State Bank v. Weil, 141 Pa. 457; Iron City Bk. v. Fort Pitt Nat. Bk., 159 Pa. 46; Myers v. Southwestern Nat. Bk., 193 Pa. 1, p. 12; Connors v. Old Forge Discount & Dep. Bk., 245 Pa. 97, p. 101; Lesley v. Ewing, supra, p. 139.

In short, this case, and the guiding principles which govern it, may be summarized thus: Under the circumstances at bar, as soon as the plaintiff became aware of the fact that a certified check was outstanding in his name, he was immediately fixed with the knowledge that he occupied a relation toward the certifying bank which, in law, gave him certain defined rights with corresponding obligations. At the time of the commission of the forgery, and for a long while thereafter, up to February 12, 1914, the defendant bank was not put on notice even of the probability of fraud, and, as a consequence, it did not have an opportunity to protect itself; whereas the plaintiff then, or early in January, 1914, at least had that notice consisting of the knowledge of facts which, by the exercise of due diligence, would have disclosed to him not only the forgery but the identity of the drawee bank. If, through carelessness and indifference to the rights of others, the plaintiff failed to inform himself from known and readily accessible sources of information, the case must be viewed as though he had the knowledge which the exercise of ordinary diligence would have disclosed to him; hence, not having made any proper effort to afford the certifying bank that fair opportunity of protecting itself to which, under the law, it was entitled, he and not the defendant must suffer the loss. Finally, the facts leading to this determination being undisputed, a jury could not be permitted to draw a contrary conclusion; therefore, the court below was

justified in entering judgment non obstante veredicto in favor of the defendant.

As said by our late Brother ELKIN in Lesley v. Ewing, supra, at p. 139, "It may be, as contended, that the rule of law held to be applicable to such cases in our own State is not in harmony with the rule adopted in some other jurisdictions"; but that the Pennsylvania law on this subject is not entirely out of harmony with other leading jurisdictions is made apparent by the following cases: Dana v. Nat. Bk. of Republic, 132 Mass. 156, 158, 159; Gloucester Bk. v. Salem Bk., 17 Mass. 33, 44, 45, 46; Leather M'f'rs Bk. v. Morgan, 117 U. S. 96, 115.

The assignment of error is overruled, and the judgment is affirmed.