# Mutual Loan & Savings Association of Chambersburg *v.* National Surety Company, Appellant.

*Bonds—Contracts of indemnity—Misrepresentations—Discharge of indemnitor—Evidence—Insurance contracts.*

1. In an action on a fidelity bond indemnifying a building association against pecuniary loss by reason of any misappropriation of funds which might be committed by its treasurer, where the

surety company was misled by material written declarations of the president of the association to the effect that a certain character of audit had been held upon the books and accounts of the person whose honesty was to be underwritten, and that such audit had shown certain favorable results, whereas, in point of fact, there had been no such audit as certified, and, had it been held, the dishonesty of the person about to be bonded would undoubtedly have been indicated, binding instructions should have been given for the defendant.

2. In such a case it appeared that the treasurer had defaulted, causing a loss to the association, that when the bond in suit was applied for the application, signed by plaintiff's president, stated that a thorough examination of the books and accounts of the association would take place, and all cash, securities, etc., be counted, compared and verified in August of each year, and further stated that such examination had in fact been made in the prior August by the auditors of the association and the books and accounts were then found correct in every particular, but evidence on the trial disclosed that the auditors did not at any time count the cash and securities on hand, look at the bank book, or make inquiry at the depository as to the balance in the treasurer's account, and that had they made such inquiry they would have discovered a deficit existing at the time of the application for the bond, and that subsequent audits would have shown an increase in the amount of such deficit. *Held,* binding instructions should have been given for defendant.

3. The authorities holding that for certain purposes bonds such as the one in suit are viewed in the law as insurance contracts, do not apply.

National Bank of Tarentum v. Equitable Trust Co. of Pittsburgh, 223 Pa. 328, followed.

Argued March 5, 1917. Appeal, No. 15, Jan. T., 1917, by defendant, from judgment of C. P. Franklin Co., Sept. T., 1913, No. 110, on verdict for plaintiff, in case of The Mutual Loan and Savings Association of Chambersburg v. National Surety Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Assumpsit on a surety bond. Before GILLAN, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,988.30 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury, answers to points, and in refusing to direct a verdict for defendant.

*Donald Thompson* and *Charles Walter,* of *Walter & Gillan,* with them *J. A. Strite, Arthur J. Stobbart* and *George Calvert,* for appellant.—The false statements in the application avoided the contract: Tarentum National Bank v. Equitable Trust Co. of Pittsburgh, 223 Pa. 328.

The association failed to give the surety company immediate notice of the default, required by the bond: Bartels Brewing Co. v. Employers' Indemnity Co., 251 Pa. 63; Woolverton as Pres. of the New York Transfer Co. v. Fidelity & Casualty of N. Y., 190 N. Y. 41; Hood v. Fahnestock, 8 Watts 489; Patterson's Est., 234 Pa. 128; Bexar Bldg. & Loan Assn. v. Lockwood et al., 54 S. W. Repr. 253; Vogemann et al. v. American Dock & Trust Co. (131 Appellate Div. 216), 198 N. Y. 586.

*W. K. Sharpe,* with him *O. C. Bowers* and *William S. Hoerner,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 16, 1917:

In February, 1912, the defendant company executed and delivered to The Mutual Loan and Savings Association of Chambersburg a fidelity bond in the sum of $5,000, indemnifying the latter for one year against pecuniary loss by reason of any misappropriation of funds which might be committed by its treasurer, Isaac Stine. This obligation was renewed and in force on March 3, 1913, on which date Stine died, a defaulter, owing over $8,000 to the association. Shortly thereafter, William S. Hoerner, the plaintiff's attorney, notified the defendant of the shortage in Mr. Stine's account. The surety company denied liability; suit was brought on the bond; the case came to trial and the verdict favored the plaintiff; defendant has appealed.

The plaintiff is a local building and loan association,

incorporated under the laws of Pennsylvania; its constitution stipulates the following officers: a president, vice-president, secretary, treasurer, board of directors and an attorney. In addition, the by-laws provide that a "general manager," who "shall have general charge and management of the business," shall be appointed by the board; that the president shall perform "such duties as usually appertain to that office"; that the secretary shall be the custodian of the papers and securities of the association, keep its records, receipt to the members for moneys paid by them, turning the same over to the treasurer at least once in each week, make reports of the "finances and business of the association," and, finally, that, "in the absence or disability of the general manager, he [the secretary] may act in his stead"; the treasurer is required to "deposit all moneys received by him in the name of the association in some good and solvent bank," to keep accounts, subject to inspection by "the auditing committee" of the association, and to give a bond for the faithful performance of his duties; the attorney is required to give legal advice and to "attend to all legal matters in which the association is interested," with express "authority to enter the appearance of the association in any proceeding." The by-laws further provide that, annually, the president shall appoint three competent stockholders to act as an auditing committee.

The trial judge, without objection, permitted the defendant to call Mr. Hoerner, the attorney of the association, "as under cross-examination," and from his testimony it appears that in December, 1912, Miss Bassett, its secretary, received, from the bank where Mr. Stine kept his treasurer's account, notice to the effect that interest was due on a loan which, some time previous thereto, the latter was supposed to have paid off with funds specially appropriated for that purpose. The secretary took this notice to Mr. Hoerner, as the attorney for the association, and he had an interview with one of the officers of the bank, who informed him that the obli-

gation in question was still due and unpaid. This evidently made Mr. Hoerner suspicious, for he inquired as to the treasurer's bank balance; which information was refused. The attorney then called upon Mr. Stine, who confessed that he had not paid the note, and that his failure in this respect "was due to his not having......enough funds in bank to pay it."

It appears that the plaintiff association had no general manager; that Miss Bassett, the secretary, was in charge of its office, which adjoined the private law office of Mr. Hoerner; and, so far as the evidence indicates, these two looked after the daily routine affairs of the concern. Although the secretary had the knowledge already indicated of the treasurer's default, and turned the matter over to the association's attorney for further investigation, yet the other officers and directors of the institution were not officially informed upon the subject until after Mr. Stine's decease.

The bond in suit provides, inter alia, "that, if the employer or any officer becomes aware of the employee ......committing any......unlawful act, the surety shall be immediately notified"; further, that, "upon becoming aware of any act which may be made the basis of a claim hereunder, the employer shall give immediate notice thereof to the surety." As already stated no notice was given to the defendant company by the plaintiff association of its treasurer's default until after the latter's death. It appears that Mr. Stine, who enjoyed good standing and financial credit in life, died insolvent; hence, the defendant claimed there had been a material departure to its prejudice from the terms of the bond; but the trial judge instructed that, on the facts at bar, the plaintiff was not "in default with respect to either of said [previously-quoted] conditions," and this is complained of in several assignments of error. It is not necessary to pass upon the complaints in question, however, for we are convinced that binding instructions should have been given for the defendant on another

point that rules the case as a whole; this we shall next consider.

When the bond in suit was applied for, the plaintiff's president made these written statements: (a) That a thorough examination of the books and accounts of the association would take place, and all "cash, securities, etc., be counted, compared and verified" in August of each year; (b) That such an examination had in fact been made in the prior August, by the auditors of the association, and the books and accounts were then found correct in every particular. At the trial, the men who made the audit in question were called, and admitted that, although they had served the association in this capacity for many years, they did not at any time either count the cash and securities on hand, look at the bank book, or make inquiry at the depository as to the balance in the treasurer's account, contenting themselves by simply inquiring of Mr. Stine whether he had sufficient cash in bank or on hand to cover the balances shown by the books, and accepting his reply as a verity. Likewise it appeared that, had the auditors examined Mr. Stine's bank account or made proper inquiry, they would have discovered an apparent deficit existing at the time of the application for the surety bond; and subsequent audits would have shown an increase in the amount of this shortage. With these facts established by either documentary evidence or uncontested and undisputed testimony, the trial judge instructed the jury that, unless they found the statements contained in the application for the bond "knowingly false and fraudulent" and made "with an intent to deceive" (as to which there was no evidence), their falsity in fact would not defeat a recovery. This instruction, which is directly contrary to the law as laid down by us in National Bank of Tarentum v. Equitable Trust Co. of Pittsburgh, 223 Pa. 328, is complained of in several assignments of error, the appellant contending that, under the established law, on the material facts relevant to this branch of the case, it was

entitled to the verdict without regard to the question of plaintiff's intent, the only material issue being as to the substantial truth or falsity of the statements in question.

In the Tarentum case, the defendant executed a fidelity bond on a bookkeeper employed by the plaintiff bank. For the purpose of obtaining this bond, an officer of the latter institution certified that the books and accounts of its employee had been examined and found accurate in every respect. The bookkeeper proved dishonest, and, in a suit against the surety company to compel the latter to make good the amount of the former's peculations, it was shown that he had been systematically stealing from his employer for some time past. The evidence indicated that, "had an effective audit...... been made by the bank," prior to the application for the bond, in all probability the fraudulent practices of the bookkeeper would have been discovered, and this would have "prevented the issue of any such certificate as was given to the defendant company." The trial judge submitted to the jury the questions, whether the statements contained in the certificate accompanying the application for the bond "were untrue or substantially true," with instructions that, if they found the latter to be the case, then there was no defense to the action and the plaintiff ought to have a verdict; but adding that, if they found such statements were "not substantially true and were misleading in regard to the examination of his [the bookkeeper's] accounts," then the verdict ought to be for the defendant. The verdict accorded with this last instruction, and we sustained the judgment entered thereon for the defendant, saying, "The information asked for by the trust company was entirely proper for its guidance in the transaction"; that, "without doubt," the bond was given "upon the faith of the statements contained in the certificate"; and that, under such circumstances, "the bank cannot be heard in disavowal of the representations made by its executive officer, which led

the defendant company to agree to continue its responsibility."

In the case at bar, the plaintiff did not attempt to show that any such examination of its books, as stated by its president, when he applied for the bond in suit, had, in fact, been made; on the contrary, as to this, it simply contended that the defendant had failed to prove the statements, with reference to the last prior audit, to have been fraudulently made with an intent to deceive. In all essential particulars, the false statements in the present case are identical with those in the Tarentum case. In each instance the surety company was misled by material, written declarations, to the effect that a certain character of audit had been held upon the books and accounts of the person whose honesty was to be underwritten, and that such audit had shown certain favorable results, whereas, in point of fact, there had been no such audit as certified, and, had it been held, the dishonesty of the person about to be bonded would undoubtedly have been indicated. The two cases, however, are sought to be distinguished by the court below on the ground that, in the one cited by appellant, the plaintiff certified that its employee's books, etc., had been examined by "us," while the certificate at bar states the examination had been made by auditors. We do not see any force in this attempted distinction. The plaintiffs in both instances being corporations, of course, in making their examinations, they had to act through individual representatives—be they auditors or otherwise. It was the duty of the president of the plaintiff association to ascertain the nature of the audit inquired about and depended upon by the defendant, before certifying its character to the possible prejudice of the latter.

We have examined the authorities relied upon by counsel for the appellee, holding that for certain purposes bonds such as the one in suit are viewed in the law as insurance contracts; but none of them either expressly or impliedly overrules the Tarentum case, which governs

here. The material facts, that bring the present controversy within the principle of the authority just cited, are established by documentary evidence and not only uncontested but undisputed testimony, given in most part by officers or members of the plaintiff association; the verity of these facts is not attacked, only their sufficiency in law; and, finally, the inferences and conclusions to be drawn therefrom are certain and inevitable. Under the circumstances, the learned court below should have given binding instructions for the defendant (Marks v. Anchor Savings Bank, 252 Pa. 304, 310-11); the fourteenth assignment, which complains of the refusal so to do, is sustained.

Judgment reversed and here entered for defendant.