Estate of Benjamin Globman, Deceased, Appellant,
*v.* Southwestern Nat'l Bank.

Argued October 13, 1931.

Before Trexler, P. J.,
Keller, Linn, Gawthrop, Cunningham and Baldrige,
JJ.

*Maurice J. Friedman,* for appellant.

*Raymond A. White, Jr.,* and with him *Maurice W. Sloan* of *Sloan, White and Sloan,* for appellee.

OPINION BY GAWTHROP, J., December 16, 1931:

This is an action brought by Benjamin Globman, a depositor in defendant bank, to recover $899, the amount of a check which he drew on it, and which it paid and charged to his account on a forged endorsement of the payee's signature. Globman died before the trial and his executors were substituted as plaintiffs. The verdict was against defendant, but the court below entered judgment in its favor non obstante veredicto on the ground that plaintiffs failed to prove that Globman gave prompt notice to the bank after he learned, or by reasonable diligence should have ascertained, that the endorsement was forged. Hence this appeal.

The facts and circumstances which the evidence tended to establish and upon which the case must turn will be stated. On February 16, 1925, H. J. Meyers was a member of the Eagle Progressive Association, a mutual loan society. Samuel Steinberg was its president and Globman was its treasurer. Globman kept the funds of the association on deposit in defendant bank in his name as an individual. On February 16, 1925, Globman drew a check for $899 against his deposit in defendant bank payable to the order of H.

J. Meyers. The check was paid by the bank and carried what purported to be the endorsement of the payee, Meyers, and also the name of Steinberg thereunder. The verdict establishes that the endorsement of the name of the payee was a forgery.

The first time that any controversy arose in respect to the check was in July, 1927, at a meeting of the association at which Globman and Meyers were present. At that time the association was paying out dividends to its stockholders. Meyers complained that the amount of the dividend paid to him was less than was usually paid on his stock. The officers told him that there was "a loan against him." He protested that he had not received "any loan whatsoever," that he "never signed a note," and that "I would like to see the note that I had signed ......" "I did not ask anything about the check." Thereupon Globman told him that he would produce the note. Meyers testified: "Q. When did they show you the check? A. They did not show me the check until about—they could not show me the note—and it was along about October when I first saw the check ...... I did not see the check in July. I tried to find out about the note and they did not produce the note they produced the check. I kept going there and said I wanted to see the check ......" According to plaintiffs' witness, Clibanoff, at this meeting Meyers said to Globman, "I would like to see the judgment note I signed for it" (the loan). Globman promised Meyers "that he would produce the note in a few weeks or so ...... A few weeks passed and he couldn't find the note." Globman sent for Meyers and told him that he could not find the note. Then Meyers said, "Have you got the check drawn against me for that amount of money?" Globman answered in the affirmative and promised Meyers that he would look up his checks. Then, according to this witness, "a few months passed and Mr.

Meyers called and Mr. Globman showed him the check for $899 paid by the bank," which had been in his possession during the whole transaction described, and Meyers denied that the endorsement was his signature and threatened to sue the association. According to the witness, Meyers, as already stated, the check was produced to him "along about October." It is admitted that the notice from plaintiff to the defendant bank that the endorsement of the payee's name was a forgery was given on October 8, 1927.

It was upon these facts and circumstances, substantially, that the court below submitted to the jury the question whether Globman acted "with reasonable diligence in reporting the forgery to the bank after he ascertained it, or reasonably could have ascertained it if he had been normally alert and reasonably careful in that respect," and subsequently entered judgment for defendant n. o. v. In entering the judgment the court proceeded upon the ground that although Meyers did not actually inform Globman that the endorsement was a forgery until October, 1927, nevertheless, when Meyers told Globman that he never received the money and demanded the production of the check, which admittedly Globman had in his possession, Globman had no right to allow several months to go by without looking up and producing the check and investigating the authenticity of the endorsement so that, if it was forged, he might notify the bank; and that if the check had been shown to Meyers when it was demanded by him the fact of the forgery would have been definitely ascertained at that time. The court adds, and the record discloses, that plaintiffs offered no excuse for the delay in producing the check or making the investigation.

The question is whether, under the facts and circumstances fixed beyond controversy by the evidence, the court below was warranted in declaring as matter

of law that Globman failed to exercise due diligence in giving notice of the forgery to the bank. The duty of a depositor when a forgery has been perpetrated in connection with a check to which he is a party has been considered by our Supreme Court in several cases. The subject is fully discussed and the leading cases are referred to in Marks v. Anchor Savings Bank, 252 Pa. 304. Under the settled rule in this State, where the signature of the drawer of a check has been forged and the depositor could have gained knowledge of the fraud if he had examined his cancelled checks and he fails to perform that duty and ascertain the fact of the forgery and impart it to the bank, there can be no recovery in a suit by the drawer against the bank; Myers v. Southwestern Nat. Bank, 193 Pa. 1; McNeely Co. v. Bank of North America, 221 Pa. 588.

In Connors v. Old Forge D. & D. Bk., 245 Pa. 97, a suit by a depositor against his bank to recover the amount of a check paid on a forged endorsement of the payee's name, the Supreme Court sustained the entry of a non-suit on the ground of a failure promptly to inform the defendant of a mispayment. It appeared that the depositor had substantial grounds for suspicion and actually did suspect the forgery forty-two days before he notified the bank, but it did not appear that he was certain of the forgery until the fourth day before such notice. It was held that it was his duty to notify the bank promptly after June 23rd, on which day, according to his testimony, he had informed his attorney that "the check was misendorsed, and the bank had no business to cash the check."

In Lesley v. Ewing, 248 Pa. 135, a depositor sued to recover the amount of a check paid on a forged endorsement of the payee's name. It appeared that the check was issued February 7, 1907, to cover an investment by the depositor in a mortgage. In July, 1911, he was informed by the attorney who had repre-

sented him in the transaction that the mortgage was of doubtful validity and positive knowledge that it was a forgery came to him prior to October, 1911. He said that he first positively knew that the endorsement was a forgery on December 7, 1911. He notified the bank of the forgery four days later. He received the cancelled check from the bank a few days after October 10, 1911. There was no evidence that he knew the signature of the payee, and his examination of the check would not necessarily have disclosed the forgery of the payee's name. It was held that when he learned that the mortgage was a forgery, as a prudent business man, he should have inquired with reasonable diligence about the payment of the check which had been made payable to the order of the supposed mortgagor, because it was apparent that some one must likewise have forged the endorsement of the payee on the check before the money was paid on it, and that at that time it was his duty to act promptly in notifying the bank if he intended to demand payment of the amount paid on the forged endorsement.

In Marks v. Anchor Savings Bank, supra, a suit to recover the amount of a certified check which the plaintiff alleged was wrongfully paid by the defendant bank on a forged endorsement of his signature as payee, it appeared that at least forty days before plaintiff notified the bank of the forgery he was aware of a fraud perpetrated upon him in connection with a promissory note which was a part of a transaction which involved the check. He failed promptly to follow up the knowledge he had when he learned of the fraud and take advantage of the sources of information at hand which would have disclosed the fact of the forgery of the check. It was held as matter of law that he failed to exercise due diligence and was so negligent as to preclude him from asserting a lack of knowledge which he could have had for the asking;

that the case must be viewed as though he had the knowledge which the exercise of ordinary diligence would have disclosed to him; that, as he did not make a proper effort to afford the certifying bank the fair opportunity of protecting itself to which it was entitled, he and not the bank must suffer the loss; and that as the facts were undisputed a jury could not be permitted to draw a contrary conclusion.

Our conclusion is that the present case is ruled in principle by the Marks case and the decisions on which it is based, and that the information which Globman had some months prior to the date of the giving of notice of the forgery to the bank was sufficient to arouse in him a real suspicion that a fraud had been committed in respect to the negotiation of the check by the person to whom he delivered it (not the payee), and cause him promptly to inform himself as to the facts by doing what he afterwards did. His failure to follow up the knowledge which he had was such negligence as prevents his recovery in this action. The court below was justified in entering judgment non obstante veredicto. In view of this conclusion, it is unnecessary to pass on the assignment of error complaining of the refusal of the court below to amend the verdict so as to include interest.

The judgment is affirmed.